# Wytheville.

## Prince's Administrator and Others v. McLemore and Others.

### June 11, 1908.

1. Limitation of Actions—*Effect of Creditor's Bill.*—The effect of a creditor's bill is to stay, during its pendency, the running of the statute of limitations as to those debts brought into the suit and kept alive while it is still pending, but when the suit is once ended it no longer has any efficacy in repelling the running of the statute.

2. Equity Practice—*Consent Decree—Vacating—Fraud.*—A decree made by consent of counsel for parties cannot be set aside either by re-hearing, appeal, or bill of review, unless, by clerical error, something has been inserted in the decree as by consent to which the party has not consented, in which case a bill of review might lie. If, however, the decree has been obtained by fraud, relief may be had against it by an original bill.

3. Equity Practice—*Consent Decree—Accident or Mistake—Vacating—Original Bill.*—A consent decree finally disposing of a cause and which was obtained by accident or mistake, without the knowledge of a *quasi* party affected thereby, though without fraud on the part of the parties consenting thereto, cannot be set aside by a bill of review, but may be upon an original bill filed for that purpose and stating a proper case; and the parties will be restored to their former situation, whatever their rights may be. The parties are entitled to the same relief as though a fraud had been perpetrated upon them, for to refuse relief would be equivalent to sanctioning a fraud.

Appeal from a decree of the Circuit Court of Greensville county. Decree for complainants. Defendants appeal.

*Affirmed.*

The opinion states the case.

*E. P. Buford,* for the appellants.

*L. D. Yarrell* and *R. B. Davis,* for the appellees.

KEITH, P., delivered the opinion of the court.

David Prince executed a deed of trust on two tracts of land then owned by him, containing 641 and 400 acres, respectively, dated February 23, 1883, to secure a bond to Mrs. Caroline R. Pope for $2,500, which became due on February 24, 1885. In the year 1889, David Prince died possessed of the land conveyed in this deed and considerable other real and personal property. J. B. Prince qualified as his administrator, and continued to act as such until 1903, when he died and W. J. Sebrell, Jr., qualified as administrator *de bonis non* upon his estate.

In April, 1890, J. B. Prince, surviving executor of J. H. Prince, deceased, suing for himself and all other creditors of David Prince, deceased, who would come in and bear their share of the costs, instituted a chancery suit in the Circuit Court of Greensville county, in which the administrator, children and heirs at law of David Prince, deceased, were made parties defendant; and, in accordance with the averments and prayer of that bill, a decree was entered at the April term, 1890, directing an account of the transactions of the administrator of David Prince, deceased, and of the debts outstanding against his estate, and of the real estate of which he died seized and possessed, with its fee-simple and annual values.

On October 8, 1890, the commissioner reported in accordance with this decree. That report, among other things, contains this statement: "The administrator (presumably the administrator of David Prince deceased) also requests the commissioner to report that there is a debt due Mrs. C. R. Pope for $2,500 secured by a trust deed, on farm upon which D. Prince lived. The administrator thinks it wise and is of the opinion that it would be advantageous to sell the lands at Belfield and Hicksford and this together with what he has in hand will pay

off the encumbrance aforesaid, and secure the home place to the minor children. Your commissioner, in view of the facts set forth, recommends that the suggestions made by the administrator be carried out, and that a commissioner may be appointed to effect the sales as suggested by the administrator." In another part of the report, in stating a list of the debts which are a lien on the estate created in the lifetime of David Prince, the commissioner reports as follows: "A deed of trust, executed by David Prince on the 23rd day of February, A. D., 1883, conveying the following real estate, viz.: A tract of land containing 641 acres, more or less, it being the 'Homestead' and residence of the grantor, also 400 acres situate partly in Greensville and partly in Southampton county, to secure a debt of the sum of $2,500 due Mrs. Caroline R. Pope, of Southampton county." "Interest from February 23, 1883, to October 20, 1890, $1,075; total $3,575," as of October 20, 1890. The commissioner adds that it is more than probable that the interest upon the above amount has been paid, but it is thought prudent to report it.

To this report there was no exception, and it was confirmed by decree of October 20, 1890. In this decree it is recited, among other things, that "there is an unsatisfied deed of trust in favor of C. R. Pope on two tracts of land belonging to D. Prince, deceased, one of which is the homestead farm, and that there are other lands belonging to said deed of trust, and that it will be to the interest of all parties to sell the lands of Belfield and Hicksford; and it also appearing from said report that the amount that would be probably realized from the sale of the land in Belfield and Hicksford, with the amount now in the hands of the administrator, would be sufficient to pay off the said deed of trust, the court doth adjudge, order and decree that J. B. Prince be and he is hereby appointed a special commissioner to sell the 23 59-100 acres of land in Belfield and the vacant lot in Hicksford."

On April 21, 1891, the sale of these lands was reported

amounting to $2,329. These sales were confirmed; and "it appearing to the court that there is in the hands of said commissioner the sum of $632.02 balance from the cash payment, the court doth decree that the said commissioner pay the same to the settlement of the deed of trust held by C. R. Pope against D. Prince, deceased." And on the 24th of April, 1896, a decree was entered directing a further account of the debts against the estate of David Prince, "and also an account showing what balance is now due on the bond held formerly by Mrs. C. R. Pope and secured by a deed of trust from D. Prince, which accounts the said commissioner will audit and report to court with any other matters specially stated, deemed pertinent by himself or required to be so stated by any interested party."

In June, 1895, Daisy N. Prince, a daughter of David Prince, filed her bill in the Circuit Court of Greensville county, in which she makes the other heirs at law of David Prince parties defendant, and asks for a partition of the real estate of which he died seized and possessed.

On August 13, 1895, in vacation, a decree was entered in that suit, to ascertain whether or not this land could be conveniently partitioned; whether or not the entire subject matter may be allotted to any party who will accept the same and pay therefor to the other parties such sums of money as their interest therein may entitle them to; and whether the interest of those entitled to the subject matter or its proceeds would be promoted by a sale of the entire subject, or allotment of part and sale of the residue.

The commissioner reported that a sale of the entire subject matter was advisable and promotive of the interests of all concerned; and at the October term, 1895, a decree was entered appointing J. B. Prince and J. L. McLemore, either of whom was authorized to act, commissioners to sell the land upon the terms set out in the decree.

On December 20, 1895, Commissioner McLemore reported the sale of three tracts—the home place to L. J. Sledge for the

sum of $3,650; the Adams tract to Charles Baker for the sum
of $705; and the Tillar tract to L. J. Sledge for the sum of
$700. All of these sales, except that of the Tillar tract, were
confirmed, and as to that a resale was ordered, which was sub-
sequently made and J. B. Prince became the purchaser of it at
the sum of $850, which was reported and subsequently con-
firmed by the court. The bonds for the deferred payments in
each of these sales were made payable to the commissioner, Jas.
L. McLemore.

On November 13, 1895, just before these sales were made
by McLemore, commissioner, the bond for $2,500, executed by
David Prince to Mrs. Pope, passed by successive assignments,
which are endorsed upon it, to J. L. McLemore, the commis-
sioner, and became and remains his property.

At September rules, 1903, J. B. Prince, Jr., administrator
of J. B. Prince, deceased, filed his bill against W. J. Sebrell,
Jr., administrator *de bonis non* of David Prince, deceased, and
against the several heirs at law of the said David Prince, from
which it appears that J. B. Prince, Sr., in his lifetime, had
been required to pay off and discharge an obligation of one
J. E. Prince, upon which he, together with David Prince, de-
ceased, were co-sureties; and that, therefore, the estate of J. B.
Prince, Sr., was entitled to contribution from the estate of
David Prince, deceased. He, therefore, prays that the liability
of the estate of David Prince to make contribution to the estate
of J. B. Prince, Sr., deceased, may be ascertained and paid
over to him, J. B. Prince, Jr., as administrator. This bill
further states, that inasmuch as the matters set out in the bill
of *J. B. Prince's Admr.* v. *David Prince's Admr.* are inti-
mately connected with the suit of *Prince, Surviving Executor*
v. *Prince's Admr.*, which is the creditors' suit, instituted in
1890, "and as the said last mentioned cause is yet incomplete
and unfinished, that it would be to the interest of all parties
that they hereafter be heard together, and the rights of the sev-
eral parties ascertained according to equity and good con-
science."

On October 21, 1903, a decree was rendered in the last-mentioned case of *J. B. Prince, Jr., Admr.* v. *W. J. Sebrell, Jr., Admr. d. b. n. of David Prince, deceased, and others,* setting forth that the cause was brought on to be heard on the bill of complaint taken for confessed as to the defendants, all of whom are adults; and directing a complete and final account of the transactions of J. B. Prince, deceased, as administrator of David Prince, deceased; an account of the transactions of J. B. Prince, deceased, as special commissioner in the chancery suit of *Prince, Surviving Ex'or* v. *Prince's Admr., &c.;* and an account of what money, if any, had been paid to Daisy M. Prince, Nannie P. Sebrell and D. T. Prince, only heirs at law of David Prince, deceased, by J. B. Prince, deceased; and an account of the amount paid by J. B. Prince, deceased, as co-surety with David Prince for J. B. Prince, and whether the estate of David Prince, deceased, should contribute one-half to the estate of J. B. Prince, deceased, and also the number of co-sureties on said bonds so paid off by said Prince, and whether they, or their estates, are solvent.

On February 10, 1905, the consolidated cause of *Prince, Surviving Ex'or* v. *Prince's Admr.,* and *Prince's Admr.* v. *David Prince's Admr.,* came on again to be heard upon the papers formerly read and upon a report of Commissioner Deakins, filed December 6, 1904, to which report there was no exception. The court disposes of certain matters which are not of interest in this investigation, and then directs certain accounts to be taken; and on March 22, 1905, a decree was entered as follows:

"These causes came on this day, by consent of parties, by their attorneys, to be further heard in vacation, upon the papers formerly read, and were argued by counsel. On consideration whereof, and it appearing to the judge of said court sitting in vacation, from the statements of the parties by their attorneys, that all the matters in these causes have been settled between the parties on the basis of the decree entered herein on the 10th

day of February, 1905, and by consent of the said parties by their attorneys, it is ordered that such settlement between the parties be made final and conclusive of all matters raised by the pleadings, and that these causes be removed from the docket."

On October 31, 1905, J. L. McLemore gave notice to all the parties in interest, that on the first day of the December term of the Circuit Court of Greensville county he would move to have the causes of *Prince, Surviving Ex'or* v. *David Prince's Admr.*, and *J. B. Prince, Admr.* v. *David Prince's Admr.*, restored to the docket, which had been removed by the decree of March 22, 1905; and that the court would be asked to set aside and annul the decree of March 22, 1905, in so far as the same removed the causes from the docket, or affected the interest of James L. McLemore.

By decree of February 8, 1906, the causes were restored, and on the same day McLemore offered a paper which he styles a bill of review, in which he sets out that "these proceedings were had without notice to him, who was an interested party, or privy, to the original suit, by reason of his claim having been proved therein, and being still unpaid; that the statement of counsel was erroneous, in that the facts in controversy in the said proceedings had not been disposed of; that both counsel for complainants and defendants knew that his bond was still unpaid, and that he was vitally interested in the very matters attempted to be disposed of in the decree; and that, although affecting his interest as it did, to their knowledge, he was given absolutely no notice either of the time and place of asking for same or of its being heard by consent, but by the consent of counsel whose clients were benefited thereby an order was entered in vacation, making final their private agreements, and cutting him off from every avenue of relief.

The demurrer and answer filed by the defendants to this bill are directed to it in large measure, if not wholly, as a technical bill of review. They claim that Jas. L. McLemore was

neither a party nor a privy in any proper sense to either of the suits in which the final decree was entered, and that he is not entitled to file a bill of review to have that decree reheard and reversed. They insist, moreover, that the debt originally due Mrs. Pope of $2,500, of which he is the assignee, was never properly reported in the chancery cause of *Prince, Surviving Ex'or.* v. *Prince's Admr.;* that while the effect of the creditors' bill was to stay, during its pendency, the running of the statute of limitations, it only had that effect as to those debts which were brought into the suit and kept alive while it was still pending; and that the suit once ended has no longer any efficacy in repelling the running of the statute of limitations. And this, we think, is the result of our decisions upon the subject.

We will now inquire into the several defenses and see how far they are conclusive of the issues in controversy.

Without undertaking to determine whether J. L. McLemore held such a relation as party or privy as would entitle him to file a bill of review in the cause of *Prince, Surviving Ex'or* v. *Prince's Admr.,* he is in this instance precluded from doing so upon another well settled principle. The decree of March 22, 1905, is upon its face a decree by consent. A bill of review is designed to relieve against errors apparent upon the face of the decree, or for after-discovered testimony. The last ground of relief may be disregarded, as it is not invoked in this case; and to grant relief against a consent decree for error is a contradiction in terms. There can be no error in a consent decree, for consent cures all error.

So it is said in Daniel's Chancery Prac. (4th ed.) at p. 973, "A decree or order, made by consent of the counsel for the parties, cannot be set aside, either by rehearing or appeal, or by bill of review, unless, by clerical error, anything has been inserted in the order, as by consent, to which the party had not consented; in which case a bill of review might lie. If, however, the decree has been obtained by fraud, relief may be had against it by original bill." And this we understand to be the accepted doctrine upon the subject.

We are of opinion, however, that while McLemore's bill
cannot be entertained as a bill of review, nor as a bill in the
nature of a bill of review, that it is good as an original bill.

In Daniel's Chancery Prac. (4th ed.) at p. 1584, it is said:
"If a decree has been obtained by fraud, it may be impeached
by original bill, without the leave of the court; the fraud used
in obtaining the decree being the principal point in issue, and
necessary to be established by proof, before the propriety of
the decree can be investigated. Where a decree has been so
obtained, the court will restore the parties to their former situa-
tion, whatever their rights may be. * * * When a decree
has been made by consent, and the consent has been fraudulently
obtained, the party aggrieved can only be relieved by original
bill. A bill to set aside a decree for fraud must state the
decree, and the proceedings which led to it, with the circum-
stances of fraud on which it is impeached."

There is no charge of fraud in this case, and no proof of it
had it been charged; but we are of opinion that there has been
a mistake against which a court of equity will relieve, and, in
this court at least, accident or mistake affords sufficient ground
for relief against a decree.

In *Byrne* v. *Edmonds*, 23 Gratt. 200, the facts were as fol-
lows: "S, a married woman, makes her will under a power.
On her death her will is admitted to probate; and then a suit
is brought to set it aside as not executed according to the
power. It is set aside in the circuit court; but upon appeal
that decree is reversed, and a part of the will is established;
and this is recited in the decree. In fact by some accidental
mistake in printing the record in the court of appeals, the will
is changed, so that a devise of land given, subject to pay an
annuity to another, is given absolutely; the annuitant not being
a party in the cause. A court of equity has jurisdiction, on
the ground of accident, to correct the error of the court of
appeals, establish the true will, and enforce the payment of the
annuity." It appears that as soon as the mistake was discov-
ered the parties applied to the court of appeals to correct it,

but the term having ended that court was powerless to grant
relief.  Thereupon, the legislature was applied to and passed
a bill giving to the circuit court jurisdiction to entertain an
original bill to correct the mistake; but upon appeal this court
said: "We do not deem it necessary, in our view of this novel
and curious case, to enter upon a discussion of the question so
elaborately argued by the counsel for the appellant, as to the
authority of the legislature to pass the act of April, 1861, to
enable the Circuit Court of Fauquier to take jurisdiction of
the case, after the final decree of the court of appeals—whether
such a law, acting retrospectively upon rights already vested
under the decision of the appellate court of last resort, is un-
constitutional and void—or, whether that act, authorizing a
court to re-open and re-hear a cause finally decided by the'
supreme court of appeals, is an invasion of judicial power,
and beyond legislative authority.  These are interesting and
difficult questions, which have been the subject of judicial in-
vestigation and discussion in this court, in the case of *Griffin's
Ex'or.* v. *Cunningham,* 20 Gratt. 31.  But, in the view we take
of the case before us, these questions do not necessarily arise,
and need not be here disposed of.  We are of opinion that,
independent of the act of April '61, the Circuit Court of
Fauquier had jurisdiction to hear and determine the case made
by the complainants' bill—that no legislative act was neces-
sary to confer such jurisdiction; but that under its inherent
and original jurisdiction, as a court of equity, it had the power
and authority to hear and determine such a case; and that no
legislative sanction was necessary to confer such power.

"Treating the case outside and independent of the act of
assembly, the bill must be regarded as a bill impeaching a
decree based upon a fictitious or fallacious case, so made by
accident or mistake, and for which the complainant was in no
way responsible, and could not prevent.  In a proceeding and
before a court, to which the appellee was not a party, and in
which she was not represented by counsel, a will is established

as the will of the testatrix, which was not her will, without any default or negligence on her part; but by mere accident or mistake in printing the paper—an accident which misled both the court and the counsel—there was established and substituted in the place of the true will (under which the appellee was one of the principal objects of the testatrix's bounty), another and a fictitious will, which deprived her of all the benefits which her aunt, the testatrix, had been careful to secure to her.

"It would be strange, indeed, if such a case, appealing as it does to every instinct of justice, could not be brought within the benign and far-reaching powers of a court of equity. One of the highest prerogatives, and one of the favorite subjects of equity jurisprudence, is to give relief against the consequences of mistake and accident."

We have seen in this case that there was a creditor's bill; that it had the effect of stopping the running of the statute of limitations; that the debt in question was embraced in the report of a commissioner who was directed to ascertain the debts due by David Prince's estate, and the liens binding upon his lands, though it does not appear at whose instance the debt was reported; and it further appears that this debt was assigned to J. L. McLemore, and that he as commissioner sold the lands of the debtor, and that the bonds for the purchase price were payable to him as commissioner.

It thus appears that McLemore had an interest, and a very vital interest in the suits which were disposed of by the consent decree of March 22, 1905. He was the owner of a debt which had been reported in the suit of *Prince, Surviving Ex'or.* v. *Prince's Admr. and others,* the creditors' suit, which debt had been kept alive by the proceedings in that suit, and was a valid and subsisting obligation up to the moment of time when the decree purporting to be by consent of all parties was entered. To that decree McLemore not only never consented, but in point of fact he had no notice that the entry of such a decree was contemplated. Of this there is no doubt; nor can

there be any doubt that the decree would never have been en-
·tered had the court been advised as to the truth of the situation;
and we think, under all the circumstances of the case that it
comes fully within the principle announced in *Byrne* v. *Ed-
monds, supra.*

On the case made, and upon the principles we have discussed,
we think that the consent decree should be set aside, and Mc-
Lemore restored to all of his rights as they existed at the in-
stant before that decree was entered. As was said in the quota-
tion from Daniel's Ch. Pr. already made (p. 1584): "If a
decree has been obtained by fraud, it may be impeached. by
original bill, without the leave of the court; * * * Where
a decree has been so obtained, the court will restore the parties
to their former situation, whatever their rights may be." And,
as we have already said, the mistake proved in this case ought
to entitle the parties to the same relief as though a fraud had
been perpetrated upon them, for to refuse relief under such
circumstances would be equivalent to sanctioning a fraud.

We reach, therefore, by a somewhat different route, the same
conclusion arrived at by the circuit court.

· When it had restored the cases to the docket and set aside
the decree, upon the so-called bill of review, the court entered
a decree, directing a further account of the debts outstanding
against the estate of David Prince, deceased, with their digni-
ties and priorities, "and especially a further account of the
balance remaining unpaid upon the debt of twenty-five hundred
dollars which was due to Mrs. Pope, and the payment whereof
was secured by the deed of trust from David Prince, deceased,
to J. B. Prince, trustee, bearing date of February 23, 1883,
filed among the papers of the said cause of *Prince, Surviving
Ex'or.* v. *Prince's Admr.,* which debt is now owned by J. L.
McLemore; said account to be taken as directed by decrees
heretofore entered on the 21st day of April, 1891, and on the
24th day of April, 1896, respectively in the original cause of
*Prince, Surviving Ex'or.* v. *Prince, Admr. etc.*

"2nd. An account of the real estate whereof David Prince, deceased, died seized which has not already been sold under orders in these causes, or either of them, showing in whose hands said real estate now is and the facts and circumstances of any transfers of such real estate as may have heretofore been made."

This decree was entered on the 5th of October, 1906, and on the 3rd of April, 1907, the commissioner filed a report showing the balance due upon this debt as of April 3, 1907, to be $4,216.66. The amount of this debt seems to have been undisputed, and the defense relied upon before the commissioner was the statute of limitations, which we have already sufficiently considered.

By decree of April 4, 1907, the partition suit of *Prince* v. *Sebrell and wife* was brought on to be heard along with *Prince, Surviving Ex'or.* v. *Prince's Admr.*, and *Prince's Admr.* v. *David Prince's Admr.*, upon the papers formerly read and the report of the commissioner made under the decree of October 5, 1906. The report was confirmed, and Jas. L. McLemore, assignee of Caroline R. Pope, was subrogated to all of her rights and privileges and those of her personal representative in the debt of $2,500, as reported by the commissioner, and Jas. L. McLemore, special commissioner in the cause of *Prince* v. *Sebrell and wife and others,* was ordered, out of the funds in his hands to pay to himself as assignee the sum of $4,216.66, and out of the remainder, if any, to pay the costs of the suit, and any surplus to the heirs of David Prince, deceased. And that decree, for reasons already stated, is affirmed.

*Affirmed.*