# CHARLESTON.

F. P. KELLEY et al. v. JOHN THOMPSON et al.

Submitted February 9, 1921.   Decided February 15, 1921.

1 .   EQUITY—*Judgment—Caption Does Not Determine Nature of Bill; Bill to Annul Decree for Fraud Considered Original Bill.*

A bill to annul a decree for fraud in its procurement, filed after the adjournment of the term at which it was entered, will be construed as an original bill, although in its caption it describes itself as a bill in the nature of a bill of review. (p. 694).

2.   JUDGMENT—*Essentials of Bill to Set Aside Decree for Fraud Stated.*

A bill to set aside a decree for fraud must state the decree, and the proceedings which led to it, with the circumstances of fraud on which it is impeached. (p. 694).

3.   APPEAL AND ERROR—*Costs—Equity—Decree Sustaining Demurrer Should Grant Leave to Amend, and on Reversal Leave Will be Granted; Costs Denied Appellant for Failure to Raise Question in Lower Court.*

A decree sustaining a demurrer to a bill deemed insufficient generally should grant leave to amend before dismissing it, and if upon appeal the bill appears to be amendable, the decree will be reversed, and the cause remanded, with leave to amend, but without costs to appellant, he not having asked permission to cure the defect. (p. 694).

Appeal from Circuit Court, Randolph County.

Suit by F. P. Kelley and others against John Thompson and others.   Decree for defendants on demurrer, and plaintiffs appeal.

*Reversed and remanded.*

*W. H. & E. L. Maxwell,* for appellants.
*A. M. Cunningham,* for appellees.

LYNCH, JUDGE:

The decree whose correctness is challenged upon this appeal sustained defendant's demurrer to the bill and dismissed it without granting leave to amend, and held the bill unamendable.

Upon its face and by its prayer the pleading purports to be a bill in the nature of a bill of review, though formally it is an original bill filed to annul the decree entered in the suit of John Thompson against F. W. Smith and his wife, Creed Isner, trustee, F. P. Kelley and J. H. Lawson; Kelley and Lawson being plaintiffs in the bill so dismissed. Both suits brought in the same court had for their main purpose an adjudication of the true ownership of a 40-horse power furnace boiler, a 35 horse power engine, and a No. 4 Star feed grinder, the title to each of which is claimed by Thompson on the one part and by Kelley and Lawson on the other. Thompson, who was plaintiff in the first suit, based his right to the engine and boiler on a purchase by him and a loan of the property to the Smiths, to be used by them to furnish the necessary motive power for the operation of a grist and flouring mill owned by them in Randolph County, and to the feed grinder by a purchase by the Smiths and payment by Thompson of the purchase price therefor, and through a sale and purchase by him of the engine, boiler and grinder at a sale by Isner, trustee, under the terms of a deed of trust executed by the Smiths to Isner covering the three items of property, the trust being to secure Thompson the return of the engine and boiler and the payment of the money so advanced by him to pay for the grinder.

The plaintiffs, Kelley and Lawson, who, together with Isner, the trustee, and the Smiths, were defendants in the Thompson suit, trace their title to the engine, boiler and feed grinder to their purchase of the grist and flour mill, then owned by the Smiths, at a judicial sale authorized by decree of the same court entered in the suit of G. M. Hart against the Smiths and a man named Canfield, the engine, boiler and feed grinder having, prior to the sale under the decree, been attached to or installed in and as a part of the mill and operated in connection therewith by the Smiths. To the Hart-Canfield suit neither Thompson nor plaintiffs Kelley and Lawson were parties, but they were present when the sale was made and the mill property purchased by Kelley and Lawson, and, with the acquiescence or permission of Isner, who executed the decree of sale, Thompson publicly announced his ownership of the engine, boiler and

.feed grinder, and accompanied the announcement with the expressed intention and purpose to enforce his lien on them under the trust to Isner, notwithstanding their attachment to the mill property, then about to be sold under the decree. This announcement Kelley and Lawson heard, as they admit, but they understood it only in a qualified sense and not as broadly as the danguage used imports. The effect of the qualification need not be considered at this time, as we are dealing only with the demurrer. It is, however, important to note that the lien on the mill proper, enforced by the decree of sale entered, was superior in dignity and priority to that of Thompson under the deed of trust to Isner, because the first mentioned lien antedated the second and existed long prior to the inception of the arrangement between the Smiths and Thompson, if there was such an arrangement.

To establish his right to enforce in his favor the lien under the terms of the deed of trust by the Smiths to Isner, Thompson brought his suit against them, Kelley and Lawson, and upon a full hearing on the merits of the controverted title to the engine, boiler and feed grinder a decree, now questioned on the ground of fraudulent procurement, sustained Thompson's right to the property and ordered it to be sold and the proceeds applied to the satisfaction of the liens and liability so secured. This order also appointed Isner to make the sale, and Thompson became the purchaser.

The specific ground alleged by plaintiffs in their bill for the annulment of that decree is the formation by Thompson and the Smiths of a conspiracy to defeat the right claimed by Kelley and Lawson by virtue of their purchase of the mill sold under the order of the court in the Hart-Canfield proceeding. In other words, the bill charges that Thompson and the Smiths combined to procure and did procure the decree in the suit of Thompson against the Smiths, Kelley and Lawson by perjury and false swearing designed and effected by them to defraud Kelley and Lawson of their right and interest in the engine, boiler and feed grinder.

Although not as certain and definite in its statements of the grounds of relief as a bill of the kind ordinarily should be, its

allegations are not so far defective or objectionable as to warrant dismissal for that reason alone. If true, and for the purpose of the demurrer we must treat the allegations of the bill as true, they sufficiently charge, in general terms, the fraud relied on and lack of knowledge and information on the part of the plaintiffs, Kelley and Lawson, until after the termination of the Thompson suit and the adjournment of the terms at which the decree was entered and the sale under the deed of trust therein decreed, and their inability to ascertain and discover the fraud so perpetrated until a breach of the amicable relations theretofore existing between the Smiths and Thompson occurred, followed by litigation between them due to such breach, in which each charged the other with falsehood and perjury in the Thompson-Smith suit in respect to the true ownership of the engine, boiler and feed grinder.

Although the bill filed by Kelley and Lawson may, and perhaps does, contain sufficient allegations concerning the unlawful combination and the perjury and false swearing thereby consummated, yet they are not as definite or as specific as they should be in that respect. They are somewhat vague and uncertain and do not state with particularity how or in what respect the fraud practiced was the efficient cause for the decree complained of. Plaintiffs do not claim to have been surprised by the perjury, though they do say they did not know of it when it was committed, and not until long afterwards. Unless there was such surprise operating as a fraud, perjury is not a ground for a new trial or a rehearing or review, unless made so by statute, and there is in this state no legislation upon that subject. But surprise alone is not sufficient; it must be coupled with other facts and circumstances of sufficient weight to justify the belief that but for the false and fraudulent testimony the litigation might have terminated otherwise than it did. Such deception usually is chargeable to the misconduct of the litigant who prevails. As such it is one of the grounds of equitable cognizance. *Anderson* v. *Woodford,* 8 Leigh 316, 327-328; *Clark* v. *Sayres,* 48 W. Va. 33; *Bodkin* v. *Rollyson,* 48 W. Va. 453; *Plant* v. *Humphries,* 66 W. Va. 88; *Fulton* v. *Ramsey,* 76 W. Va. 45, 49; 14 Enc. Pl. & Pr. 739. "If a decree has

been obtained by fraud, it may be impeached by original bill, without the leave of the court; the fraud used in obtaining the decree being the principal point in issue, and necessary to be established by proof before the propriety of the decree can be investigated. * * * A bill to set aside a decree for fraud must state the decree, and the proceedings which led to it, with the circumstances of fraud on which it is impeached." 2 Daniell's Chancery Pl. & Pr. (6th Amer. Ed.) *1584-*1585; *Prince v. McLemore,* 108 Va. 269, 277.

Plaintiffs' bill, however, is not verified, nor is it accompanied by affidavits showing or attempting to show in what respect or to what extent there was perjury or false swearing on the part of the Smiths or Thompson, or in what way the fraud was perpetrated and accomplished the intended purpose. The bill also is equally at fault in this respect. These omissions are not fatal but are curable by amendment. Though the defects are such as to render the pleading demurrable, the omission may be supplied, and for this reason the court should have granted plaintiffs leave to amend, instead of holding the bill unamendable.

There is not sufficient foundation for the motion of the appellee to dismiss this appeal as improvidently awarded, as it is predicated upon the conception that less than the jurisdictional amount is involved; in other words, that the grinder alone is the subject matter of the litigation, and that its value is less than $100. In whomsoever may be the ownership of the engine and boiler, plaintiffs claim title thereto by purchase at the judicial sale mentioned, and the validity of their title is one of the matters adjudicated adversely to them in the Thompson suit, and it is from that decree that plaintiffs seek to purge the fraud alleged to have been committed by Thompson and the Smiths; wherefore the motion to dismiss is overruled.

For the several reasons given, our order will affirm the decree in so far as it sustains the demurrer, but reverse it in so far as it dismissed the bill, and remand the cause with leave to amend in the particulars mentioned, if plaintiffs be so advised, with direction, however, to re-enter the decree of dismissal

if they do not elect to amend, but will not award appellants costs upon this appeal, as they did not pray for leave to amend; this under the authority of *Dickinson* v. *Foster,* 81 W. Va. 739, and cases cited at page 743.

*Reversed and remanded.*