MARGARET C. O'NEILL v. GRACE W. COLE AND EDWARD S. COLE, JR.

September 10, 1952.

Record No. 3946.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller and Whittle, JJ.

o

The opinion states the case.

*Thomas G. Mays, Jr.* and *Adams, Porter & Radigan,* for the appellant.

*Robert Whitehead* and *John B. Boatwright,* for the appellees.

MILLER, J., delivered the opinion of the court.

The subject matter of this litigation is a tract of farmland

in Buckingham county, Virginia, containing about 400 acres, with improvements thereon.

On November 10, 1950, Margaret C. O'Neill, formerly Margaret S. Cole, filed suit in the circuit court of Buckingham county against Grace W. Cole, her mother, and Edward S. Cole, Jr., her brother. She sought to have a decree, which had been entered by that court at its December term 1937 in the chancery cause of *Edward S. Cole* v. *Fanny C. Young,* and others, declared void.

The parties will be designated complainant and defendants in accordance with their positions in the trial court, and the chancery suit of 1937 will be styled *Cole* v. *Young, et als.*

In her bill, complainant alleges that the decree entered in the chancery cause in 1937 was obtained by fraud and says that it should be annulled for that reason. An adjudication to that effect would establish her as full owner of the tract of land in controversy.

The bill of complaint impleaded all of the papers in the suit of *Cole* v. *Young, et als.,* and with those papers so made a part of the bill, it states the following facts:

On February 19, 1937, W. Thomas Cole, then a resident of Buckingham county and owner of the farm in controversy, died testate. He left a brother, Edward S. Cole, father of complainant, as his nearest kinsman. On May 22, 1937, W. Thomas Cole's will, dated March 6, 1926, was admitted to probate, and recorded in the clerk's office of the circuit court of Buckingham county in Will Book 4, page 215. By this will he devised to complainant, his niece, the proceeds to be derived from the sale of this farm after deducting certain charges made against it in the will. Those charges were, however, relinquished or paid from other sources, the effect of which was to leave complainant as devisee of the unencumbered farm.

The bill further alleges that on July 26, 1937, Edward S. Cole instituted the suit of *Cole* v. *Young, et als.,* the purpose of which was to remove the farm from the operation of the will on the grounds that the testator had, for considerations rendered, contracted and promised to will the farm to Edward S. Cole. Margaret S. Cole, who was then sixteen years of age, was the principal defendant in that suit. The present bill also makes the following specific allegations:

"8. That your Complainant was never shown the will of W. Thomas Cole, and your Complainant was never told the contents of the said will, and your Complainant did not know the contents of said will, nor did she see any of the suit papers in the aforesaid chancery cause until August, 1950.

"9. That on the contrary your Complainant was told by Edward S. Cole that the title to the property was so involved that none of the parties would benefit unless a chancery cause was instituted and the property taken in his name, and further that he, Edward S. Cole, would not be able to send your Complainant to college unless this was done.

"10. That your Complainant, because of her youth and inexperience in such matters and placing her faith and trust in the representations of her father, Edward S. Cole, and under the inducement that she would not be sent to college unless Edward S. Cole took title to the said property, made no further inquiries and raised no objection to the said chancery cause."

The bill then recites that the depositions given in the suit of *Cole* v. *Young, et als.* by complainant's father, mother, and one John Lee were "fabricated and designed to mislead the court and defraud your complainant, denying to her her rightful share in the estate of W. Thomas Cole." The bill further charges that by these fraudulent actions and practices, the complainant was prevented from knowing her true interest in the matter and prevented from protecting her rights, and that the court was defrauded, imposed upon and misled into decreeing Edward S. Cole to be the owner of the farm. Recital is then made that Edward S. Cole died intestate in January, 1949, leaving Grace W. Cole, his widow, Edward S. Cole, Jr., his son, and complainant as his sole heirs and distributees, and that his widow and son now wrongfully claim interests in the farm to the exclusion of complainant's full ownership.

On December 4, 1950, answer was filed by Grace W. Cole to the bill of complaint. She denied the allegations of fraud and asserted that complainant, Margaret C. O'Neill, was fully advised of and consented to what was done in the suit of *Cole* v. *Young, et als.* In 1950 Edward S. Cole, Jr., had not attained his majority, and John B. Boatwright, who was also counsel for the adult defendant, was appointed as his guardian *ad litem*. On December 22, 1950, the guardian *ad litem* filed a brief answer on

behalf of the infant which adopted the answer of the adult defendant theretofore filed.

On March 12, 1951, before any evidence had been heard or action taken by the court, suggestion was made that Edward S. Cole, Jr., had attained his majority, and a decree was entered reciting that fact and relieving the guardian *ad litem* from further responsibility in the premises. By this decree Edward S. Cole, Jr., was also allowed, over the objection of complainant, to file his demurrer to the bill. Thereafter, complainant "moved the court to strike the demurrer * * *" on the ground that the infant had theretofore answered by his guardian *ad litem* and "the demurrer could not be properly filed after the answer had been filed." Before ruling upon the motion to strike, the court heard argument upon the merits of the demurrer. Upon indication by the chancellor of his intention to strike the demurrer, Edward S. Cole, Jr., moved to be allowed to withdraw his answer theretofore filed by his guardian *ad litem* and refile his demurrer. Over complainant's objection, that motion was granted, and the guardian *ad litem's* answer was withdrawn and the demurrer refiled. The cause then came on to be heard on the bill with exhibits impleaded and the demurrer.

The chief grounds of the demurrer were: (a) that the bill failed to allege such fraud in the suit of *Cole* v. *Young, et als.,* as would justify avoidance of the decree entered in 1937, and (b) the bill disclosed laches on the part of complainant that precluded a finding in her favor. After consideration, the demurrer was sustained and the bill dismissed.

The questions presented for decision are: (1) should Edward S. Cole, Jr., upon attaining majority, have been allowed to withdraw his answer filed by his guardian *ad litem* and interpose a demurrer to the bill, and if so, (2) should the demurrer have been sustained.

When the guardian *ad litem* filed his answer on December 22, 1950, he was rightfully exercising a power and performing a duty within the limits of his authority. Though his act is binding upon the infant, there is no statute or rule of law which prevents the court from allowing withdrawal of that answer if the suit be not unduly delayed, and if it be consonant with justice to do so.

If the status of a cause be such that the rights of no one will be prejudiced by withdrawal of a guardian *ad litem's* answer

and interposition of a demurrer, such procedure rests within the sound discretion of the chancellor.

Rule of court, 2:23, effective February 1, 1950, provides:

"The time for filing pleadings may be extended by the court in its discretion, and such extension may be granted though the time fixed has already expired; * * *"

The procedure adopted by the chancellor does not violate this rule of court.

The withdrawal of the answer was sought before any evidence had been taken or decree of any character entered. It was not for the purpose of delay, for the demurrer, which went to the substance of the cause, was promptly interposed.

Though a demurrer, an answer and other defensive pleadings may be filed at the same time, yet after an answer has been properly filed in a chancery cause, and so long as it remains filed, a litigant, adult or infant, should not thereafter be allowed to demur to the pleading that has been previously answered. Whether or not the answer may be withdrawn and the litigant then allowed to demur rests in the court's sound discretion. Section 8-134, Code 1950, *Elmore* v. *Maryland, etc., Milk Producers' Ass'n*, 145 Va. 42, 134 S. E. 472, 1 Barton's Chancery Practice, 3d ed., 331, 332.

The infant, upon coming of age during the pendency of the suit, "is entitled personally to manage his own defense. He may disregard the answer set up for him by his guardian *ad litem*, and file an entirely new answer for himself, or have the former answer amended, but after decree or judgment he cannot file a defendant's pleading." 43 C. J. S., Infants, sec. 116(b), p. 322.

In the chancery cause of *Weisiger* v. *Richmond Ice Mach. Co.*, 90 Va. 795, 796, 20 S. E. 361, withdrawal of an answer by an adult and the filing of a demurrer was allowed. The court said:

"The company and several of its officers were made defendants, all of whom answered. Afterwards, and before any further proceedings were had in the cause, the defendants asked and obtained leave, over the objection of the plaintiffs, to withdraw their respective answers and to demur, which was done, whereupon the demurrers were sustained and the bill dismissed by the decree complained of.

"The objections that have been urged to this decree are (1)

that the court erred in allowing defendants to demur after they had answered, and (2) that, independent of this consideration, the demurrers ought to have been overruled.

"As to the first point, it is enough to say that it was within the discretion of the court to allow the defendants to withdraw their answers and to demur, and as there was no unreasonable delay in moving for leave to do so, we are of the opinion that the objection is not well founded."

 In the early stages of the cause, and certainly when the rights and interests of an infant party, or one who has just attained his majority, are involved, it is within the sound discretion of the court to permit withdrawal of an answer and the filing of a demurrer.

We find no error in the procedure adopted in this cause.

Complainant, by this original bill, makes a direct attack upon the decree of 1937 and seeks to impeach and annul it on the ground that it was obtained by fraud. *Prince* v. *McLemore,* 108 Va. 269, 61 S. E. 802, 11 Michie's Jurisprudence, Judgments and Decrees, sec. 129, p. 161.

Defendants insist that the only fraud charged is that the several witnesses who testified in the suit committed perjury. It is then argued that the decree should not be declared void because the fraud relied upon was not extrinsic or collateral to the matter tried in the original cause, but intrinsic and directly related to the issues actually determined. We are reminded that, by the weight of authority, intrinsic fraud alone is not deemed sufficient upon which to grant the equitable relief sought.

 "It is undoubtedly the general rule supported by the weight of authority that mere perjury or false swearing alone is not ground for equitable relief, since it is regarded as an intrinsic fraud. * * *" 3 Freeman on Judgments, 5th ed., sec. 1241, p. 2582.

Other authorities adhering to this rule are *McClung* v. *Folks,* 126 Va. 259, 101 S. E. 345; *Pico* v. *Cohn,* 91 Cal. 129, 25 P. 970, 27 P. 537, 25 Am. St. Rep. 159, 13 L. R. A. 336; *United States* v. *Throckmorton,* 98 U. S. 61, 25 L. ed. 93; 31 Am. Jur., Judgments, secs. 662, 664, 667 and 669; 49 C. J. S., Judgments, sec. 374; L. R. A. 1917B, p. 409, *et seq.* See also, *Taylor* v. *Taylor,* 159 Va. 338, 165 S. E. 414.

 We need not concern ourselves with whether or not,

under the circumstances of this case, a mere charge in the bill that the decree assailed was obtained upon perjured testimony, states a good cause of action for equitable relief. Here the allegations of paragraphs 8 and 9 are that the infant did not know the contents of the will but was told by her father that the title to the property was involved and she could receive no benefit from her devise unless ownership of the land in question was transferred to him, and unless that was done, she could not secure the education she desired. It is further alleged in paragraph 10 that because of these false statements, she made no further inquiry concerning the status of her estate, nor did she make, because of those statements, any objection to the divesting of her estate and its transfer by the court to her father. These facts, and the just inferences deducible therefrom amount to extrinsic and collateral fraud which precluded her from presenting her true case and rights to the court for adjudication. The bill is not demurrable because of insufficiency of the charge of fraud or because of the character of the fraud alleged.

Does the bill disclose laches on the part of complainant that precludes her from obtaining the relief sought?

An inspection of the papers in the suit of *Cole* v. *Young, et als.,* discloses that the infant, Margaret S. Cole, then sixteen years old, filed an answer in proper person, which she made oath to and signed. The answer reads in part:

"That she is the daughter of Edward S. Cole and the niece of W. Thomas Cole. That she had lived in the house with her uncle for some years prior to his death and that she did not know of any will, but that she did believe that her father Edward S. Cole was to receive his brother's estate at his death with the exception of a watch mentioned in the said will which her uncle had given to respondent's brother.

"That she is willing to have the will set aside as to her and the property conveyed to her properly conveyed to her father in accordance with the agreement between her father and his said brother the said W. Thomas Cole."

Though this answer shows that before her uncle died she had no knowledge of the will's existence, she did know of its existence when she signed the answer and consented to the property being decreed to her father.

Her deposition taken in that cause on December 2, 1937,

discloses that she would be seventeen years of age in February, 1938, and she expected "to finish at the Arvonia High School this year." In her deposition she also testified as follows:

"Q. Did you understand that your father was to have your uncle's property at his death?

"A. Yes sir.

"Q. Are you will*ing* for your father to have what your uncle, W. Thomas Cole left you?

"A. Yes sir."

It thus appears from complainant's bill that in 1937, when she was almost seventeen years of age, she knew that she had been willed an interest in the farm but agreed to relinquish it and permit its transfer to her father. Until February, 1942, when she attained her majority, she was well aware that her father was in possession and ownership of the property, and that ownership was due, at least in part, to her having relinquished some interest in the land given to her under the will. Then, for an additional period of slightly more than eight years during which time she was *sui juris,* she made no investigation of the public records or inspection of the papers in the chancery cause to ascertain the facts and her rights, if any, in the premises. For about seven years of that latter period, her father was alive, yet for a year and a half after his death in January, 1949, she still took no steps to investigate the records or assert her now alleged rights.

Throughout the eight and one-half years after complainant became of age she may not have had actual knowledge of all the facts that the records disclosed, yet she was chargeable with notice of those facts. Knowing what she did about the suit of 1937, reasonable diligence required that she make inquiry if this claim to the farm was to be asserted. An investigation at any time after attaining her majority and before her father's death would have brought to light the facts now alleged and upon which she relies. Yet nothing was done during the lifetime of her father and no charge of fraud suggested at any time before his death. Thus the chief instigator of the conspiracy and the immediate beneficiary of the fruits of the alleged wrong is now denied the opportunity to defend these serious charges.

Though complainant attained her majority in February, 1942, there is no allegation in the bill explaining or attempting

to justify her long delay and neglect to ascertain the facts and sooner institute this suit other than her statement that she did not "see any of the papers in the aforesaid chancery cause until August, 1950."

If this delay to assert the rights claimed be permitted and the bill entertained at this late date, then the defendants, who claim through Edward S. Cole, will be denied the opportunity to secure his testimony on the matter at issue.

Complainant urges upon us that she was ignorant of the true facts until August, 1950, but the facts were available to her had she exercised reasonable diligence to ascertain them, and that being true, her neglect is not excused.

■ "Where ignorance of facts is urged as an excuse for delay, the general rules on the subject of notice, actual and constructive, come into application. As stated in Corpus Juris, which has been cited and quoted with approval, ignorance due to negligence does not excuse laches. One must have been diligent and have made such enquiry and investigation as the circumstances reasonably suggested and permitted. Means of knowledge are equivalent to actual knowledge, and knowledge of facts sufficient to suggest enquiries, which, if made, would lead to knowledge of the facts in question is sufficient to charge one with notice of the latter facts. This rule applies to suits based on fraud, and plaintiff's ignorance will not excuse, if he did not use ordinary diligence to inform himself of the facts or to avail himself of his means of knowledge." 30 C. J. S., Equity, sec. 128(b).

■ " * * * Laches is a delay in the assertion of a claim which works to the disadvantage of another, and where it appears that by reason of such delay the adverse party would be injuriously affected because of the death of witnesses by whom the truth of the situation could be proved, or for other reasons, a court of equity will decline to give relief." 7 Michie's Jurisprudence, Equity, sec. 31.

In the case of *Milligan* v. *Milligan*, 145 Va. 184, 133 S. E. 672, the allegations of the bill and the relief sought were strikingly similar to the charge and prayer of complainant's bill. A demurrer on the ground of laches was sustained in that suit, and we think that decision controlling of the question at hand.

The bill in the *Milligan Case* alleged that complainants'

mother died October 12, 1918, leaving a will executed in 1916 by which she left a life estate in all of her property to her husband (complainants' father), with remainder to complainants and that complainants' father agreed to probate that will, but on October 28, 1918, he fraudulently probated a will executed by testatrix in 1906, under which he received all of her real estate in fee simple, and her personalty was distributed according to law. The bill further alleged that he remarried and conveyed this real estate to Grace E. Milligan, his second wife, as a gift, and upon his death on November 30, 1924, willed all of his other property to her. After his death, suit was instituted by his children, the complainants, in which they sought to have the will of 1906 annulled, the deed of 1924 to his second wife set aside, and the will of their mother executed in 1916 established and admitted to probate.

Upon sustaining the demurrer filed by Grace E. Milligan to the bill of complaint, the court said:

"To sustain the contention of the appellants that they were lulled to sleep by the promise of the father to have probated the will of 1916, in the face of the acts of the father recorded upon the public records, would be to abrogate the doctrine of notice and nullify the registry statutes absolutely. It is hard to conceive how in law there could be a concealment of that which is made public by virtue of a statutory enactment.

"While due weight will be given to the relationship of the parties, this relationship will not be received as an excuse sufficient to exempt adult defendants from the performance of the ordinary duties imposed upon them by prudence and diligence.

"The appellants state that they knew the will of 1916 was in existence; they therefore knew that they had an interest in the estate of their mother. The law imposed upon them—not the father—the duty of protecting such interest." *Milligan* v. *Milligan, supra,* at 188.

"To permit the appellants to establish their case now, after the death of Isaac H. Milligan, when the appellee is deprived of the benefit of his evidence, would, in our opinion be unfair and unjust." *Milligan* v. *Milligan, supra,* at 190.

An informative treatise on laches confirmatory of the principles hereinabove set out is found in 4 Pomeroy's Equity Jurisprudence, 4th ed., sec. 1440, *et seq.*

■ "* * * Equity relieves only the diligent, however strongly the action assailed may be condemned by the conscience of the court." *McClung* v. *Folks, supra,* at 273.

■ That complainant was guilty of laches is disclosed by the bill and exhibits made a part thereof. Upon that ground the demurrer was rightly sustained. The decree appealed from is affirmed.

*Affirmed.*