COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Lemons and Senior Judge Cole
Argued at Richmond, Virginia


RHONDA G. CAMPBELL

MEMORANDUM OPINION* BY
v.          Record No. 0172-97-2          JUDGE LARRY G. ELDER
                                          JANUARY 26, 1999
JONATHAN S. CAMPBELL


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

Keith B. Marcus (Phillips, Webb &
Wallerstein, on brief), for appellant.

Mary Kathryn Hart (Rohde, Clarke & Prince, on
brief), for appellee.


Rhonda G. Campbell (wife) appeals from an order terminating

the obligation of Jonathan S. Campbell (husband) to pay child

support for Gregory A. Campbell (child), following a

determination through genetic testing that husband is not the

father of the child.  On appeal, wife contends that the court

erroneously terminated the award because (1) husband failed to

prove wife perpetrated a fraud on the court in obtaining a

judicial declaration of parentage and (2) husband is collaterally

estopped from challenging the final decree of divorce in which

the court previously found that Gregory was born of the parties'

marriage.[1]  For the reasons that follow, we affirm the ruling of

---

*Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

[1]Husband earlier moved to dismiss the appeal based on wife's alleged failure timely to file an appeal bond.  Wife subsequently provided a copy of the bond, and at oral argument, husband conceded that the bond had been timely filed.

the trial court.

## I.

## FACTS

The parties were married on June 24, 1985.  The child was born on March 19, 1991.  On July 30, 1992, wife filed a bill of complaint for divorce in which she alleged "[t]here was one child[, Gregory,] born of the . . . marriage," and she requested custody of the "child of the parties."  Although husband was personally served with the bill of complaint, he did not appear or file a response.  Wife filed depositions of her sister and herself.  Both wife and her sister testified on deposition that Gregory was a "child[] born of [her] marriage" to husband.  On September 11, 1992, the circuit court entered a final decree of divorce, in which it found "that there was one child born of [the parties'] marriage namely Gregory Alan William Campbell, born March 19, 1991."  The court awarded wife custody of the child and transferred "all future matters pertaining to custody, visitation and support of [the] child" to the juvenile and domestic relations district court (JD&R court).

Subsequently, wife attempted to collect child support from husband through the Division of Child Support Enforcement (DCSE).  On January 22, 1996, DCSE entered an administrative order requiring husband to pay support for the child.  Husband challenged the support order in the JD&R court, claiming he was not the child's father.  Although genetic testing ordered by the

JD&R court confirmed that husband was not child's father, the JD&R court held that it lacked jurisdiction to overturn the circuit court's prior paternity determination contained in the final decree of divorce.

Husband appealed the JD&R court's ruling on the support order. He simultaneously petitioned the circuit court to set aside the final decree of divorce and paternity determination therein based on wife's alleged fraud and to "reinstate [husband's] divorce action." In the circuit court, husband testified that the parties first separated in 1990 and that they did not live together or have sexual relations during the period in which the child, born March 19, 1991, was conceived. Husband testified that a week after he and wife reconciled in August of 1990, wife told him she was pregnant by a man named "Joe" and showed him a positive home pregnancy test. He and wife separated again, for the final time, in September or October of 1990. Husband admitted that he sent the child an Easter card--addressed "To My Little Boy" and signed "Love, Your Dad"--but contended that he did so because he felt sorry for the child and that he knew he was not the father. Wife did not contact him when the child was born or when he sent the card, and he had no involvement in the child's upbringing beyond sending the card. He was aware that the child had his last name.

Husband testified "that he became aware of the divorce when he was personally served papers at the Sheriff's office" but that

"he did not read the papers because [wife] assured him she wanted nothing from him." He testified that he was not represented by counsel in the divorce proceeding and that "it did not occur to him that a child that [wife] had admitted was not his would be mentioned in the divorce papers."

Wife moved to strike husband's case on the basis "that he had failed to prove fraud; that he acknowledged that he was the father of Gregory; and that it was contrary to the well established law of Virginia." The court denied the motion. Wife presented no evidence and renewed her motion, which the court again denied.

Husband argued that wife had perpetrated a fraud on the court and DCSE by "attesting that Gregory was a child of the marriage," which fraud allowed the court to revisit the issue of paternity; that, based on wife's fraud, husband's failure to appear in the divorce proceeding despite notice should not prevent him from challenging the decree; and that the ends of justice would be served by ending wife's falsehoods. He sought termination or reduction of his child support obligation to both wife and DCSE.

By letter of November 13, 1996, and order entered December 23, 1996, the circuit court found the following:

> [I]t is undisputed that [husband] is not the father of [the child]; that [husband] has not had any direct contact with the [mother/wife] . . . or [the child]; that [wife] has not been honest with this Court or [DCSE]; and that [husband] had notice of the divorce proceedings but chose not to do anything

- 4 -

about it . . . .

Based on those findings, it terminated the order of support to wife but required husband to pay the support arrearage owed to DCSE. Counsel for wife endorsed the order as "seen and objected to as contrary to law and evidence" and noted this appeal.

## II.

### ANALYSIS

#### A.

#### SUFFICIENCY OF EVIDENCE TO PROVE FRAUD

"On appeal, we view the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party below." Reece v. Reece, 22 Va. App. 368, 372, 470 S.E.2d 148, 151 (1996). "It is well established that the credibility of witnesses and the weight accorded to their testimony are matters solely within the purview of the trial court, and its findings will be reversed on appeal only if 'plainly wrong or without evidence to support them.'" Brooks v. Rogers, 18 Va. App. 585, 587, 445 S.E.2d 725, 726 (1994) (quoting Wyatt v. Department of Soc. Servs., 11 Va. App. 225, 230, 397 S.E.2d 412, 415 (1990)).

Wife contends husband's evidence failed to prove she committed a fraud on the court. Under the standards set out above, we find no error.

To establish fraud, the party alleging it "has the burden of proving '(1) a false representation, (2) of a material fact, (3)

made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'  The fraud must be proved by clear and convincing evidence."  <u>Batrouny v. Batrouny</u>, 13 Va. App. 441, 443, 412 S.E.2d 721, 723 (1991) (quoting <u>Winn v. Aleda Constr. Co.</u>, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984)); <u>see</u> <u>also</u> Code § 8.01-428(D) (noting that cited code section, which permits a court to set aside default judgments and correct clerical errors under certain conditions, "does not limit the power of the court to entertain at any time an independent action . . . to set aside a judgment or decree for fraud upon the court").

Fraud falls into one of two categories--intrinsic or extrinsic.  Intrinsic fraud "includes perjury, use of forged documents, or other means of obscuring facts presented before the court and whose truth or falsity as to the issues being litigated are passed upon by the trier of fact."  <u>Peet v. Peet</u>, 16 Va. App. 323, 326-27, 429 S.E.2d 487, 490 (1993).  Intrinsic fraud renders a judgment voidable only; it may be assailed only on direct appeal and not by collateral attack.  <u>See</u> <u>id.</u>  In cases involving only intrinsic fraud, "the parties have the opportunity at trial through cross-examination and impeachment to ferret out and expose false information presented to the trier of fact."  <u>Id.</u> at 327, 429 S.E.2d at 490.  "'The reason of this rule is[] that there must be an end of litigation . . . . Endless litigation, in which nothing was ever finally determined, would be worse than

occasional miscarriages of justice . . . .'" McClung v. Folks, 126 Va. 259, 269-70, 101 S.E. 345, 348 (1919) (quoting Pico v. Cohn, 25 P. 970, 971, aff'd on reh'g en banc, 27 P. 537 (Cal. 1891)).

Extrinsic fraud occurs outside the judicial process and "consists of 'conduct which prevents a fair submission of the controversy to the court.'" Peet, 16 Va. App. at 327, 429 S.E.2d at 490 (quoting Jones v. Willard, 224 Va. 602, 607, 299 S.E.2d 504, 508 (1983)). It includes "'[k]eeping the unsuccessful party away from the court by a false promise of a compromise[] or purposely keeping him in ignorance of the suit . . . . In all such instances the unsuccessful party is really prevented, by the fraudulent contrivance of his adversary, from having a trial . . . .'" McClung, 126 Va. at 270, 101 S.E. at 348 (quoting Pico, 25 P. at 971); see O'Neill v. Cole, 194 Va. 50, 57, 72 S.E.2d 382, 386 (1952) (holding sufficient to state a claim of extrinsic fraud allegations in complaint that father made false statements to daughter to persuade her not to contest judicial transfer of her property to him). Under these circumstances, "[a] collateral challenge to a judgment . . . is allowed because such fraud perverts the judicial processes and prevents the court or non-defrauding party from discovering the fraud through the regular adversarial process." Peet, 16 Va. App. at 327, 429 S.E.2d at 490.

Viewing the evidence in this case in the light most

favorable to husband, wife's fraud was both intrinsic and extrinsic. Husband testified that, although he was served with the divorce papers, he did not read them because "[wife] assured him she wanted nothing from him" in the divorce. In reality, wife sought and obtained the fraudulent determination of parentage. Husband's testimony about wife's actions outside the proceeding supported a finding of extrinsic fraud; it proved that wife intentionally and knowingly made a false representation of material fact with intent to mislead husband and that husband relied on that representation to his detriment. See O'Neill, 194 Va. at 57, 72 S.E.2d at 386; McClung, 126 Va. at 270, 101 S.E. at 348. This evidence of extrinsic fraud provided the court with jurisdiction to entertain husband's collateral attack on the judgment and to consider the allegations of intrinsic fraud, as well.

The record, viewed in the light most favorable to husband, also contains ample evidence of wife's intrinsic fraud. Wife represented in her 1992 bill of complaint for divorce that the child was born of the parties' marriage, and she and her sister gave deposition testimony to that effect. However, genetic testing performed in 1996 confirmed that husband, in fact, was not the child's father. Furthermore, in the circuit court proceedings, husband testified that he and wife were separated and did not have sexual relations during the time the child was conceived. He also testified that wife told him when they

reconciled briefly in 1990 that she was pregnant with another man's child.  Finally, wife did not testify and provided no evidence disputing husband's testimony regarding her knowledge of the child's paternity.

Based on this evidence, the trial court was entitled to conclude that husband's testimony was credible and that wife, in the 1992 divorce proceeding, knowingly misrepresented the child's paternity to the court and that she did so with an intent to mislead the court.  See Batrouny, 13 Va. App. at 443-44, 412 S.E.2d at 723 (holding wife's "admission that she has always known the child was not born of the marriage, when viewed in light of her assertion in the pleading to the contrary, is convincing evidence of her intent to defraud").  The evidence also shows that the court relied on wife's representation that husband was the child's father when, in the final decree, it ruled that the child was born of the parties' marriage and awarded custody to wife.  See id. at 443, 412 S.E.2d at 723.

On appeal, wife cites the "fundamental principle of equity jurisprudence that a litigant who files an independent action in equity to set aside a judgment must be free of fault or neglect."  See Charles v. Precision Tune, Inc., 243 Va. 313, 318, 414 S.E.2d 831, 833 (1992).  She contends that husband was not free of fault because he was personally served with the bill of complaint for divorce but failed to read it, file an answer or make an appearance.  He knew at that time that the child was not

his, and had he participated in the proceedings, she contends, he could have prevented the court from making the finding of paternity he now contests.

Although we acknowledge that wife's quotation accurately reflects the law, we disagree that this equitable principle applies in this appeal. As husband contends, the record gives no indication that wife presented this argument to the trial court. See Anderson v. Commonwealth, 251 Va. 437, 439, 470 S.E.2d 862, 863 (1996) (holding that appellant bore the burden of furnishing a record sufficient to permit appellate review). The statement of facts indicates only that wife moved to strike on the ground "that [husband] failed to prove fraud; that he acknowledged that he was the father of Gregory; and that it was contrary to the well established law of Virginia."[2] None of these objections specifically preserves the issue wife now raises. Therefore, under Rule 5A:18, the record is insufficient to preserve this issue for appeal.

B.

COLLATERAL ESTOPPEL

Wife also contends that husband is collaterally estopped by the paternity determination in the final decree from contesting the issue of paternity in these proceedings. Again, we disagree, for "'[p]rinciples of collateral estoppel may not be invoked to

---

[2]In making its ruling, the trial court did note that husband "had notice of the divorce proceedings but chose not to do anything about it."

sustain fraud.'"  Batrouny, 13 Va. App. at 444, 412 S.E.2d at 723 (quoting Slagle v. Slagle, 11 Va. App. 341, 348, 398 S.E.2d 346, 350 (1990)).  As we held in Batrouny, "[proof of] fraud . . . [prevents] the husband's action [from being] defeated by the wife's claim that he is collaterally estopped from challenging [the] issue [of paternity] which was tacitly determined in the prior divorce action."  Id.

For these reasons, we affirm the trial court's termination of the order that husband pay child support to wife.

Affirmed.