Statement.

# Richmond.

## EUBANK v. BARNES.

93   153
f108  447
f108  574

APRIL 23, 1896.

1. LACHES—*Equitable Relief Refused unless Laches Explained.*—Upon a bill filed by a daughter, after the death of her father, to set aside as fraudulent an alleged assignment, made by her father ten years previously, to her maternal uncle, of a judgment owed by her against her father, the court will carefully scrutinize all the facts and circumstances of the case, including the relations of the parties. If it appears that there has been long acquiescence in the rights of the uncle, with knowledge of his claims, and continued and unexplained silence and inaction on the part of the niece, during the lifetime of her father, and the circumstances tend to show that the assignment was made with her knowledge and approval, a court of equity will refuse its aid to set aside the assignment. In cases of this character prompt action is a condition precedent to relief. The bill should set forth specifically what were the impediments to an an earlier prosecution of the claim; what means were used to fraudulently keep the plaintiff in ignorance, and how and when she first acquired knowledge of the facts alleged. These charges, when made, should be sustained by proper proof.

Appeal from a decree of the Circuit Court of Mecklenburg county, pronounced June 4, 1894, in a suit in chancery, wherein the appellee was the complainant, and the appellant was the defendant.

*Reversed.*

The opinion states the case.

*W. E. Homes* and *Coke & Pickrell,* for the appellant.

*W. T. Atkins* and *W. W. Henry,* for the appellee.

Harrison, J., delivered the opinion of the court.

A creditor's bill was filed to subject to the payment of liens a farm owned by J. J. Barnes containing eight hundred and thirty acres. The appellee, M. K. Barnes, the daughter and only child of the judgment debtor, filed her petition in this suit asserting and asking to have paid a judgment lien of $1,000.00 held by her against her father.

The appellant, W. H. Eubank, an uncle of the appellee, who was one of the largest creditors of J. J. Barnes, filed a petition after the sale, asserting, and asking to have paid, two small judgments, one for $216.15 and interest, and the other for $31.10 with interest. These two judgments are filed with the petition, and appear to have been assigned to the appellee, M. Kate Barnes, by two judgment creditors of her father, and by the father, claiming to act for his daughter, assigned to the petitioner, W. H. Eubank. The land was sold under decree of court and the appellant became the purchaser, and, in paying his purchase money, received credit for the two judgments asserted in his petition. A deed was made to the purchaser, and the case continued on the docket for the purpose of selling the lands of other parties to the suit, which were bound by the liens audited against J. J. Barnes. Ten years after the purchaser, W. H. Eubank, had received his deed for the Barnes farm, the appellee, M. K. Barnes, brings this suit against him, in which she alleges that the two judgments set up by her uncle in his petition in the creditors' bill suit, and purporting to be assigned to him by her father, were in fact her property, and that the assignment of them by her father to her uncle was without her consent, and a fraud upon her rights, and that appellant well knew that her father had no authority to make the assignment, but, notwithstanding, he had used said judgments in paying for said land, as would appear from the creditors' suit which was

still pending on the docket, and which she asked to be read in connection with her bill. The appellee asks that payment of these two judgments may be decreed to her, and, if necessary, the land bought by Eubank resold to satisfy the same. This bill is demurred to, and an answer filed by appellant denying the allegations of the bill, and asserting that the assignments to him of the judgments were made with the consent, authority, and full knowledge of the appellee, and that she had never gainsaid or questioned the validity of said assignments from the date thereof until after the death of her father, a period of more than ten years.

There are a number of defences set up against the claim of appellee, but, in the view taken of the case by the court, it is only necessary to consider one of them.

It appears from the record that J. J. Barnes was an old man in very feeble health, with no other family but the appellee, who was a shrewd business woman, more than thirty years old at the time this sale of her father's land was made. J. J. Barnes was hopelessly insolvent, the proceeds of the sale of his farm paying but a small portion of his indebtedness. In this helpless condition, his brother-in-law, the appellant, came forward and bought the farm, and permitted J. J. Barnes and his daughter to occupy and use it, as they had always done, without charge or interference of any sort for ten years, until the death of J. J. Barnes, and then allowed the appellee to remain in possession for one year in order that she might wind up her business. The evidence shows that the appellant paid the taxes on the farm during this entire period, except two years, although it was agreed that the objects of his bounty should pay the taxes.

It further appears that the farm was fully worth a money-rent of $125.00 *per annum*, and that the appellee was an active business and money-making woman, exercising entire control of everything in connection with the farm, and that during her occupancy she sold and realized the money for

over $600.00 worth of ties, shingles, &c., from the place, without objection from her uncle, the appellant. After her father's death, and after more than ten years of free use and occupation by the father and daughter, appellant rented his farm out, having first invited the appellee to make her home with him in future.

As long as appellee was allowed to remain in possession of the farm with all of its attendant advantages, nothing was heard of any claim against appellant, but immediately upon the farm being rented out, this suit was instituted charging her dead father with conspiring with her uncle to defraud her out of the two little judgments that now constitute the subject of this controversy.

In cases of this character the law makes prompt action a condition precedent to relief. The appellee's bill shows ten years of unexplained silence and inaction. For such conduct there must be some adequate excuse, and that excuse must be set out on the face of the bill and proven. In such a case as this the plaintiff should set forth specifically what were the impediments to an earlier prosecution of her claim, how she came to be so long ignorant of her rights, and the means used to fraudulently keep her in ignorance, and how and when she first came to a knowlege of the matters alleged in her bill. *Badger* v. *Badger*, 2 Wall. p. 95.

The bill in this case contains no allegation that appellee was ignorant of the assignment and payment of these judgments to appellant, and the record contains no proof, or attempt to prove that she was thus ignorant, and it is impossible, under all the circumstances of the case, to presume otherwise than that these judgments were assigned with her full knowledge and acquiescence, if not with her positive consent.

Appellee was living with her father on the farm when sold. She filed her petition in the creditors' bill-suit setting up a judgment for $1,000.00 owned by her, and did not then

assert these two judgments, although the owner of them, if her present pretensions be true. She parted with the evidence of her ownership of these two judgments, when the assignments were delivered to appellant by her father, and yet in a period of more than ten years, she does not appear to have ever enquired of her father, or any one else, about these papers upon which the assignments to her were written. Appellee knew the land was being sold to satisfy the liens binding it, as far as the proceeds would reach, and yet she, although shown to have been a business woman, and to be unusually alert in protecting her interests of every sort, allowed the land to be sold, and in ten years made no enquiry of the purchaser, her father, or any one else, as to why these judgments had not been paid to her, and during all that time enjoyed, with her father, the uninterrupted use of the farm as a free gift from its owner, against whom she is now asserting this claim.

If appellee ever had any just claim to these two judgments she has slept too long upon her rights. She has waited until her father who claimed to act as her agent and attorney in making the assignment, and who could have explained the transaction, was dead. She has waited until the appellant is out of pocket ten years' rent, and $600.00 besides for ties, shingles, &c., taken from the place, during which time he could have protected himself against the demand now made.

There are other circumstances which show that the case stated by the appellee, in her bill is without merit; but it is unnecessary to pursue the subject further. Enough has been said to show that the defence of *laches* and acquiescence is fatal to appellee's claim.

The relations of the parties, the long acquiescence by appellee in the right of appellant, acquired under the assignment made by the father for her, the gross *laches* in asserting her right to the judgments, if she had any, are sufficient,

Opinion.

under all the circumstances of this case, to justify a court of equity in rejecting the claim and dismissing the bill.

For these reasons the decree appealed from must be set aside and annulled, and this court will enter such decree as the court below ought to have entered.

*Reversed.*