IN RE ST. CLAIR'S ESTATE..
ST. CLAIR v. ST. CLAIR, et al.

(No. 1782; January 24, 1934; 28 Pac. (2d) 894)

The cause was submitted for the appellant on the brief of *Mr. John J. Spriggs* of Lander, Wyoming.

448

The cause was submitted for the respondents on the briefs of *George F. Dobler* and *A. H. Maxwell* of Lander, Wyoming.

452

*Mr. John J. Spriggs* in reply.

RINER, Justice.

This is a proceeding by direct appeal to review several orders made by the District Court of Fremont County, in the course of the probate of the estate of John St. Clair, deceased, in said court. The facts out of which the controversy arose appear to be, in substance, these:

On December 24, 1928, John St. Clair, a member of the Shoshone Indian tribe, died on the tribal reservation in Fremont County, Wyoming. With him at the time of his death was Annie Tidzump St. Clair, an Indian woman, with whom he had been living; as his wife, for more than 18 years, their marriage having been solemnized by Rev. John Roberts, a minister, on June 1, 1910. At the time this marriage ceremony was performed, the clergyman executed and gave to the parties aforesaid a formal marriage certificate.

It appears that, previous to the date last mentioned and about the year 1900, John St. Clair and one Lucy Enos, also an Indian woman, were married. The following year a son was born to them, by name of Ray Enos St. Clair. About a year after the birth of the child and in 1902 or 1903, the mother married one Sequail Hurtado, living thereafter with him as his wife until her death, which occurred on September 27, 1921. She also had children by him. Neither the marriage of Lucy Enos to Hurtado nor that of John St. Clair to Annie Tidzump appear to have been questioned by anyone prior to the deaths of Lucy Enos and John St. Clair.

Letters of administration upon the estate of John St. Clair were issued to J. K. Moore, Jr., on January 11, 1929. An inventory of the estate property was duly made and filed disclosing that said estate consisted of personal property only, valued at $2,110.

A widow's allowance of $20 per month was ordered by the court to be paid Annie St. Clair. In due course of administration, notice of final settlement of the estate was published, after the final report of the administrator had been filed, and on the last day for the presentation of objections thereto under the law, Ray Enos St. Clair filed a petition asking that the court adjudge him to be the son of John St. Clair, deceased, and heir of said estate.

Thereafter and on May 2, 1930, a hearing was had on the petition last mentioned, and in consequence, the court found that "John St. Clair and Lucy Enos St. Clair were duly and legally married according to the customs of the Shoshone Indian tribe, and that Ray Enos St. Clair is the issue of said marriage." It was therefore adjudged that he "is the son and legal heir of John St. Clair, deceased, and that as such son and heir he is legally entitled to share in the distribution of said estate with all the legal rights of a son and heir of said John St. Clair, deceased." Review proceedings relative to this judgment were never perfected. Subsequently, on July 7, 1930, the court ordered that the allowance made to Annie St. Clair, as widow of John St. Clair, deceased, be increased from $20 to $30 per month.

Meanwhile and on April 30, 1930, Annie St. Clair had filed her petition, under the provisions of sections 6879 and 6880, Wyo. Comp. St. 1920 (Wyo. Rev. St. 1931, §§ 88-2904 and 88-2905), praying an order setting over to her, as her absolute property, all of said estate, it being alleged among other things that there was no homestead, that the property remaining in said estate was of less value than the exemption allowed by law, and that there were no minor heirs. A hearing was had on this peti-

tion, and on February 13, 1932, another judge sitting, the court entered an order granting the prayer thereof. It is from this order that the appellant, Ray Enos St. Clair, appeals, as well as from an order made on the same date overruling his motion requesting that the court declare the widow, Annie St. Clair, in default in the heirship determination hearing before mentioned as held over a year and a half previously.

Respondents have filed a motion to dismiss the case here for failure on appellant's part to comply with Rule 37 of this court, dealing with the preparation of abstracts of the record. This motion was filed May 27, 1933. More than two months later and on August 12, appellant filed an "application for permission to file supplemental abstract, also reply and supplemental brief, and statement." This application was accompanied with the papers for which leave to file was thus sought. Respondents have objected to leave being granted, pointing out, among other reasons for their position, that "No attempt has been made in the original or supplemental abstract to abstract the evidence either in substance or in narrative form as required by Rule 37."

No satisfactory reason seems to be advanced in the application for permission to file the enumerated papers why a proper abstract of the record was not prepared and filed, in the first place, as the rule of this court requires. An inspection of the proposed supplemental abstract together with the original abstract filed by the appellant makes it very clear that the objection of the respondents, above quoted, is well taken. Rule 37 of this court, in the course of its requirements, directs that:

"In the case of oral testimony and depositions,

the substance shall be reduced to narrative form except where, with respect to material portions of the record, it is deemed necessary to use the exact language thereof."

This was not done. Even the names of the witnesses testifying are in some instances omitted from the abstract, and parts only of their testimony are set forth. We find, also, that argument on the merits of the case is undertaken to be woven into the supplemental abstract with statements taken from the record itself. This should not be done. The proper place for argument, it should hardly be necessary to say, is in the submitted briefs of the parties. Under the decision of this court in Simpson v. Occidental Building & Loan Ass'n, et al., 45 Wyo. 425, 19 P. (2d) 958, we might very properly decline to grant leave to file the supplemental abstract, and forthwith dismiss the appeal.

Without regarding this case at all as a precedent for doing so in the future, yet as the record here covering the principal questions argued in the briefs of the parties is quite short, we have taken the trouble to examine it in its entirety with care. Our study thereof has led us to the conclusion that no good reason has been presented for disturbing the order setting aside the property of the estate to Annie St. Clair. Briefly, our views on the matter are these:

The contention is advanced for appellant that there was no proper proof made of the marriage of John St. Clair and Annie Tidzump. But there appears in the record, not only the testimony of the widow that she was married to John St. Clair by the Rev. John Roberts, a minister, and that she and John St. Clair lived together continuously as husband and wife from the date of the marriage un-

til his death, but also the fact that the clergyman executed and gave to them the formal certificate of marriage dated June 1, 1910, which was offered and received in evidence on the hearing below. The authorities indicate that these proofs were admissible. In 18 R. C. L. 422, § 47, it is said:

"A certificate of marriage, when properly authenticated, may be given in evidence, but as this is not a document which authenticates itself, the signature of the minister or priest should be proved."

To the same effect is 38 C. J. 1333-34. In Camden v. Belgrade, 78 Me, 204, 3 Atl. 652, 653, the court used this language:

"It being a settled rule of law that marriage may be proved in civil cases, other than actions for seduction, by reputation, declarations, and conduct of the parties, a paper found in the possession of one of the parties to the alleged marriage, or produced by such party, purporting to be a marriage certificate, is admissible upon the ground that such a possession or such a production of it is equivalent to a declaration of such party that the facts stated in the certificate are true. As evidence of an implied declaration, or admission, or as an act of one of the parties, such a certificate is admissible without separate and distinct evidence of its genuineness, or that it was given by one acting in an official capacity. Proof of its genuineness, and that it was given by one acting in an official capacity, may enhance its weight, but will not affect its admissibility. It is admissible without such proof. And if it were not admissible without some evidence of its authenticity, the fact that it is kept and produced by one of the parties as evidence of the marriage, would be sufficient evidence of its genuineness to render it admissible. 2 Gr. Ev. § 462-3; 1 Gr. Ev. § 104, et seq."

Relative to the admissibility of oral testimony by the parties to a marriage contract, 18 R. C. L. 424, § 50, says:

"The rule that the testimony of eye-witnesses to a marriage ceremony is competent to prove the marriage without the production of the certificate of marriage or accounting for its non-production is applied in numerous causes holding that the testimony of either of the parties to the marriage is admissible to prove the marriage. The testimony of one of the parties is perhaps of a higher nature than those of a mere eye-witness, who may be mistaken as to the occurrence, the identity of the parties, or their capability to contract marriage."
See also 38 C. J. 1335, § 108, and numerous cases cited.

It is contended, also, that, as the former marriage of John St. Clair with Lucy Enos was established by the evidence in the case and that, as there was no proof that these parties were subsequently divorced, it follows that John St. Clair, at the time he married Annie Tidzump, was wanting in capacity to contract such a marriage, and hence, it is void. This contention, however, disregards certain well established legal rules in regard to presumptions and the burden of proof in a matter of this kind.

We find that 18 R. C. L. 419, 420, § 43, 44, says that:

"Where it appears that the parties to a prior marriage were living at the time of a subsequent marriage of one of the parties to a third person, it will be presumed that the disability of the prior marriage had been removed by a divorce before the time of the second marriage in the absence of any countervailing evidence or corroborating circumstances. However, it has been held that there

must be something based on the acts and conduct of both parties to the former marriage inconsistent with the continuance of such marriage before a presumption of its dissolution by divorce will be presumed. Under this rule, when the parties to a second marriage live in the locality where the first wife resides, and the two wives mingle socially without protest or comment on the part of the first the presumption should be indulged; and so it will be where both parties to a marriage contract subsequent marriages."

" * * * Still presumptions of this class, while not conclusive, are sufficient, in general, to shift the burden of proof. The presumption, which increases in strength with the lapse of time, can only be overcome by clear and convincing evidence to the contrary, and the evidence to overcome it must be especially strong after the lapse of a great many years. To overcome the prima facie case established by the showing of a subsequent marriage, proof of a former marriage is required, and also evidence from which it may be concluded that it has not been dissolved by death or divorce. Mere proof of a prior marriage and that one party had not obtained a divorce is not sufficient for the other might have obtained such divorce and left him or her free to contract the second marriage."

The matter is similarly treated in 38 C. J. 1328-1330, where the following language is used:

"In the case of conflicting marriages of the same spouse, the presumption of validity operates in favor of the second marriage. Accordingly the burden of showing the validity of the first marriage is on the party asserting it, and even where this is established it may be presumed in favor of the second marriage that at the time thereof the first marriage had been dissolved either by a decree of divorce or by the death of the former spouse, so as to cast the burden of adducing evidence to the contrary on the party attacking the second marriage."

The remarks of Mr. Bishop in his work on Marriage & Divorce, Vol. 1 (4th Ed.) § 457, have often been quoted by the authorities, to the following effect:

"*Semper praesumiter pro matrimonio.* Every intendment of the law is in favor of matrimony. When a marriage, therefore, has once been shown, however celebrated, whether regularly or irregularly, or however proved, whether directly or by circumstantial evidence, the law raises a strong presumption in favor of its legality; so that the burden is with the party objecting, throughout, and in every particular, to prove, against the constant pressure of this presumption of law, that it is illegal and void. * * * This presumption increases in strength with the lapse of time through which the parties are cohabiting as husband and wife. It being for the highest good of the parties, of the children, and of the community, that all intercourse between the sexes in its nature matrimonial should be such in fact, the law, when administered by enlightened judges, seizes upon all presumptions both of law and of fact, presses into its service all things which can help it in each particular case to sustain marriage and repel the conclusion of unlawful commerce."

From another well known text writer on the same subject—Schouler on Marriage, Divorce, Separation and Domestic Relations (6th Ed.), § 1252, we take the following statement:

"It will be presumed that where parties live openly together as husband and wife for many years a prior marriage of one of them to a third party has been dissolved by death or divorce and mere proof of a prior marriage of one of the parties will not overcome the presumption in favor of the validity of the second marriage. * * *

"The burden is upon a person who asserts the illegality of a marriage to prove such illegality and where a second marriage is shown as a fact a strong presumption exists in favor of its legality which is

not overcome by mere proof of a prior marriage and that the wife had not obtained a divorce before her second marriage. The parties attacking such second marriage have the burden of proof to show that neither party to the first marriage had obtained a divorce."

The foregoing excerpts are all so amply supported by the adjudicated cases that it would needlessly tend to lengthen this opinion even to mention or undertake a review of any of them.

Applying the principles thus announced by the cited authorities to the facts appearing in the record before us, it is plain that a ceremonial marriage between John St. Clair and Annie Tidzump was proven. It will be presumed in favor of this marriage that, at the time it was solemnized, the marriage of John St. Clair and Lucy Enos had been dissolved by divorce. It is perfectly evident from their conduct that both the parties regarded that dissolution as a fact. No proof appears in the record that no sundering of the marriage tie existing between John and Lucy had not taken place. The burden to establish this fact rested upon the appellant, and he failed to sustain it. The trial court so concluded and we agree with the conclusion thus reached.

Relative to the contention that the trial court erred in overruling the motion made by appellant, seeking to have the widow of John St. Clair declared in default in the antecedent heirship proceedings wherein the court found that Ray Enos St. Clair was a son of John St. Clair, among the many reasons which may be advanced why the ruling was correct, it is sufficient to say that an examination of the order entered upon the conclusion of the hearing on the matter, renders it perfectly obvious that the rights of Annie St. Clair in the premises

were not at that time attempted to be litigated, and the court did not undertake to pass upon them.

The orders of the district court of Fremont County complained of by appellant will be affirmed.

KIMBALL, C. J., and BLUME, J., concur.