# Richmond

## ETHEL ROWE, ET AL. v. BIG SANDY COAL CORPORATION, ET AL.

June 13, 1955.

Record No. 4369.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*A. T. Griffith*, for the appellants.

*Pobst & Coleman* and *F. H. Combs*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

In February, 1952, Ethel Rowe and others, hereinafter referred to as the appellants, filed a suit in equity in the court below against Big Sandy Coal Corporation and others, praying for the vacation and annulment of a decree entered in the same court on November 21, 1919, in the equity suit of *Grundy Coal Corporation, et al.* v. *George W. Blair, et al.*, by which it was decreed that Grundy Coal Corporation, George Belcher, W. L. Dennis, Miles Charles and Green Charles were "seized of the true and perfect title to all the coal, oil and gas" rights on two tracts of land on Home Creek in Buchanan county, Virginia, the one containing 72 acres and the other 134.72 acres. After demurrers had been filed two amended and supplemental bills were filed. From a decree sustaining the demurrers to and dismissing the original and amended and supplemental bills the present appeal was allowed.

The allegations of the second amended and supplemental bill, upon which the appellants now rely, are quite lengthy and involved. The material allegations may be stated thus:

William McClanahan, the owner of several tracts of land located on Home Creek in Buchanan county, died "on the .... day of ........, 186..," leaving surviving his widow, Nancy McClanahan, and thirteen children. Dave McClanahan, one of the children, died intestate and without issue "on the .... day of ........, 18..," and his share and interest in his father's land passed to his twelve surviving brothers and sisters, among whom were Margaret Adkins and Nancy J. Clevinger. Thus each of the children of William McClanahan became the owner of an undivided one-twelfth interest in his land. The appellants then traced their direct descent from Margaret Adkins who died "on the .... day of ........, 18..," through her daughter, Nancy Rowe, who died "on the .... day of ........, 19..." It is alleged that Margaret Adkins died without having conveyed or parted with her undivided one-twelfth interest

in the McClanahan land and that such interest is now owned by the appellants.

It is alleged that certain of the defendants, the appellees here, claim title to the coal and mineral rights in certain of these lands through Nancy J. Clevinger, the daughter of William McClanahan. In 1881 Nancy J. Clevinger agreed to convey her interest in her father's land to R. T. Hackney. She failed to perform that contract and, in 1893, in a suit for specific performance a special commissioner conveyed her interest in the land to Hackney. In 1893 Hackney conveyed the Clevinger interest to George W. Blair who conveyed the coal and minerals to J. H. Stinson, E. S. Finney, W. L. Dennis and George Belcher. Stinson and Finney conveyed their interest in the coal and minerals to Grundy Coal Corporation, while Dennis conveyed a part of his interest to Miles Charles and Green Charles.

It is alleged that on July 30, 1919, Grundy Coal Corporation, Belcher, Dennis, Miles Charles and Green Charles conveyed their interest in the coal and minerals to Edwin Mann. Mann has since died and his interest in the property passed to James H. Mann and Mary H. Dubose, the devisees under his will.

Numerous persons and corporations are made parties defendant. The interests of some of these are stated. Others are made parties defendant without any attempt to describe or trace their interest in the property or the subject matter of the suit. It is alleged that Big Sandy Coal Corporation and Buchanan Realty Corporation, two of the defendants, "have asserted certain claims to certain rights in the coal, oil and gas underlying the mentioned lands, and have purported to make certain leases for the mining of coal from the said 134.72 acre tract and from the said 72 acre tract of land, and base their claim through the holdings of R. T. Hackney and wife."

On October 3, 1919, and subsequent to the conveyance of their interest in the property to Edwin Mann, Grundy Coal Corporation, Belcher, Dennis, Miles Charles and Green Charles instituted in the Circuit Court of Buchanan county a suit in equity against George W. Blair and others, "for the alleged purpose of removing a cloud from the title to" the coal and mineral rights in these lands. The original papers in that suit, which for convenience will be referred to as "the 1919 suit," are filed as exhibits with the bill in the present suit.

The bill in the 1919 suit, like that in the present suit, is long and involved. It alleges that the plaintiffs are "seized and possessed of

the legal title to all the coal, oil and gas in, upon and underlying" two tracts of land on Home Creek, the first tract containing 72 acres and the second containing 134.72 acres; that they trace their title to Nancy J. Clevinger, a daughter of William McClanahan who died "many years ago;" and that after his death and "something like 45 or 50 years ago," the children of William McClanahan made an oral partition of his land, as a result of which Nancy J. Clevinger acquired the two tracts of land here involved. The plaintiffs then trace their title to the lands and the coal and mineral rights from Nancy J. Clevinger to George W. Blair and to themselves by the various deeds and steps alleged in the bill in the present suit.

It is further alleged that by virtue of these title papers and the "long and continued possession" by the plaintiffs and their predecessors in title of such lands and mineral rights, the plaintiffs are "seized and possessed of the true and indefeasible legal title to said coal and other minerals."

The bill named as parties defendant numerous persons, including many who were alleged to be the heirs of William McClanahan at that time (1919). Among these were Nancy Rowe, through whom the appellants claim, and Nancy J. Clevinger, through whom certain of the appellees claim. It is further alleged that there may be other persons interested in the subject matter of the suit who are unknown and who are proceeded against under the general description of "parties unknown."

The bill prays, among other things, that the title of the plaintiffs to the coal and mineral rights "be quieted;" that all of the defendants be "enjoined and restrained from asserting title to the coal," minerals and other rights; that it may be "judicially declared and determined in this cause that the complainants are seized and possessed of the true and perfect legal title to said coal," minerals and other rights in the lands; that "by the parol partition of the lands of William McClanahan, deceased, the said Nancy J. Clevinger became seized and possessed of those parts" of the tracts of land formerly owned by her father; and that such oral partition of the McClanahan lands be confirmed and established as a matter of record.

In the papers in the 1919 suit is an order of publication against certain nonresidents, including Nancy Rowe, through whom the appellants claim. The order states the purposes of the suit to be the same as those prayed for in the bill.

Among the papers in the former suit is the deposition of George

W. McClanahan, filed in the clerk's office on November 15, 1919, stated to have been taken on November 14 "pursuant to notice herewith returned as a part hereof." Various returns show that notice of the taking of these depositions was served on numerous defendants. But there is no proof of service of the notice on the defendant, Nancy Rowe, other than the execution of the order of publication.

George W. McClanahan testified that he was then (1919) fifty-nine years old; that he had known the two tracts of land for thirty-nine or forty years, and that for that period of time R. T. Hackney and wife had lived on the land. William McClanahan, he said, was "killed during the Civil War;" that shortly after his death his heirs "picked three men to divide the land, which they did," but that "no deeds or writings were ever made" in confirmation of this; and that "Nancy J. Clevinger got the part which Geo. W. Blair afterwards owned."

On November 21, 1919, the decree here attacked was entered. It brings the cause on to be heard on process served on certain of the defendants and upon the order of publication as to certain non-resident defendants, including Nancy Rowe and "parties unknown," and "upon the depositions of witnesses taken on behalf of" the plaintiffs. It recites that the court being of opinion, from the evidence introduced and the title papers exhibited with the bill, that the plaintiffs are entitled to the relief prayed for, doth decree that they "are seized of the true and perfect legal title to all the coal, oil and gas * * * in, on and underlying" the two tracts of land; that the plaintiffs' title to the coal and mineral rights in the land "is hereby quieted" and the defendants are enjoined "from asserting title to, or from casting clouds upon," the title of the plaintiffs to the coal and mineral rights; that "by the parol partition of the lands of William McClanahan, deceased," his daughter, Nancy J. Clevinger, became seized and possessed of those parts of certain patents which lie within the boundary lines of the tracts of 72 acres and 134.72 acres, respectively; that the parol partition of the land has been acquiesced in for more than forty years by the other McClanahan heirs; and that the land "has been held in possession by the said Nancy J. Clevinger and those claiming under her for more than ten years prior to the severance of the coal and the minerals, oil and gas from the surface thereof."

It should be recalled here that at common law voluntary parol partition of lands between coparceners was valid without deed. Not

until section 2413[1] of the Code of 1887 became effective on May 1, 1888, was a deed required to effect such partition. 14 Mich. Jur., Partition, § 5, p. 141; 2 Minor on Real Property, 2d Ed., § 885, pp. 1129, 1130; *Bolling* v. *Teel,* 76 Va. 487, 492.

The appellants allege that the decree of November 21, 1919, is "utterly void and of no effect" for a number of reasons, among which are:

(1) The necessary parties were not before the court.

(2) The deposition of George W. McClanahan was taken prematurely and before the expiration of the required period after the execution of the order of publication; hence the allegations of the bill were not established by competent evidence.

(3) The plaintiffs perpetrated a fraud upon the court in that they falsely alleged that they were the owners of the coal and mineral rights, whereas they had conveyed such rights to Edwin Mann shortly before the institution of the suit, and in that they falsely alleged that the children and heirs at law of William McClanahan, deceased, had made oral partition among themselves of the lands which they inherited from McClanahan and that by reason of such partition Nancy J. Clevinger had acquired a portion of such lands.

In its written opinion sustaining the demurrers to the bill of complaint the lower court overruled each of these contentions. Moreover, it held that the appellants' right to equitable relief was barred by their laches and delay in asserting their claims.

On appeal the appellants make the same contentions which they asserted in the court below.

■ With reference to the claim of the lack of the necessary parties to the 1919 suit, the appellants complain that Margaret Adkins, one of the daughters of William McClanahan, was not made a party. But as has been noted, the appellants allege in their bill in the present suit that she died "on the .... day of ........, 18..," which was before the institution of the 1919 suit. Hence, she could not have been made party defendant to that suit. But her daughter, Nancy Rowe, who succeeded to her rights and through whom the appellants claim, was made a party and proceeded against as a nonresident. Thus, a party representing the interests of the appellants was before the court, and unless there be some fatal defect in the proceeding the decree complained of was binding on her and those who later succeeded to her rights.

[1] Code 1919, § 5141; Code 1950, § 55-2.

The appellants next contend that all of the other heirs of William McClanahan were not convened in and made parties to the 1919 suit by proper order of publication or otherwise. The answer to that contention is that since the appellants' predecessor in title was made a party to the suit, it is no concern of appellants that others who may have had rights in the property were not made parties. Nonjoinder of a proper party defendant will not authorize equitable relief against a judgment to other defendants who were properly cited. 49 C. J. S., Judgments, § 357, p. 715; 1 Freeman on Judgments, 5th Ed., § 223, p. 437. As is said in 1 Freeman on Judgments, 5th Ed., § 413, p. 900, "The mere fact that in the proceedings in which the judgment was rendered some persons who could or should have been made parties were not joined as such does not defeat the operation of the judgment as an estoppel between those who were in fact parties or privies, * * *."

The point is next made that the record in the 1919 suit discloses that the deposition of George W. McClanahan was taken prematurely. The certificate shows that the order of publication was published in a local newspaper once a week for four successive weeks commencing on October 3, 1919. The deposition was taken on November 14, which the appellants say was before the expiration of the 15-day period after the execution of the order of publication required by section 3232 of the Code of 1887, as amended by Acts 1906, ch. 54, p. 47, which was then in effect.[2] Hence, appellants say that under the holding in *Jeffries* v. *Jeffries' Ex'r.*, 123 Va. 147, 154, 96 S. E. 197, such deposition was not admissible in evidence against Nancy Rowe and the other nonresident defendants who had not appeared and were not given specific notice of the time and place of its taking.

Conceding, but not deciding, that the deposition was taken prematurely and without sufficient notice, this did not render the decree void for lack of jurisdiction as the appellants claim. It merely rendered the deposition inadmissible in evidence or subject to suppression. 6 Mich. Jur., Depositions, § 6, p. 93; *Unis* v. *Charlton's Adm'r.*, 12 Gratt. (53 Va.) 484; *Jeffries* v. *Jeffries' Ex'r., supra* (123 Va., at page 154); 16 Am. Jur., Depositions, § 38, p. 714; 26 C. J. S., Depositions, § 93, p. 936.

It is well settled that "equity will not afford relief against a judg-

[2] Section 6071 of the Code of 1919, which required a period of ten days after the execution of the order of publication, became effective on January 13, 1920. See Code 1950, § 8-73.

ment for insufficiency of the evidence to support it, or for erroneous rulings of the trial court in respect of admissibility of evidence." 49 C. J. S., Judgments, § 358, p. 715. See also, 31 Am. Jur., Judgments, § 646, p. 224; *Id.*, § 634, pp. 216, 217. This rule is based upon the principle that in the absence of fraud such erroneous ruling or irregularity must be taken advantage of by appeal. 11 Mich. Jur., Judgments and Decrees, § 131, p. 168.

The allegations in appellants' bills that the plaintiffs in the 1919 suit were guilty of fraud upon the court in falsely alleging that the children and heirs of William McClanahan made an oral partition of the property, and that the plaintiffs were at the time of the institution of the suit the owners of the coal and mineral rights are not allegations of such fraud as, if proven, would entitle the appellants to the equitable relief of vacating and annulling the decree. These are allegations of *intrinsic* fraud and, like false swearing and perjury, are directly related to the issues actually determined in the cause. Fraud warranting the equitable relief here prayed for must be *extrinsic* or collateral to the issues determined in the original suit, that is, it must be such as has prevented a fair submission of the controversy to the court. *O'Neill* v. *Cole*, 194 Va. 50, 56, 57, 72 S. E. (2d) 382, 385, 386, and authorities there collected; 31 Am. Jur., Judgments, § 654, p. 230 *ff.*

The circumstances of the present case demonstrate the reason for and soundness of the rule. If it be true, as the appellants allege, that the plaintiffs in the 1919 suit made false allegations in their bill, such could have been discovered by the defendants in that suit by an examination of the records and by proof of numerous witnesses who were then living but are long since dead. But for such rule, every losing litigant might consider himself the victim of false allegations and attack an adverse judgment on that ground. Thus there would be no end to litigation. See *McClung* v. *Folks*, 126 Va. 259, 268-272, 101 S. E. 345; 31 Am. Jur., Judgments, § 669, pp. 238-239.

Moreover, we agree with the trial court that the appellants and those under whom they claim have been guilty of gross laches in delaying the assertion of their claims. The court had jurisdiction of the subject matter and the parties to the 1919 suit. Thirty-three years elapsed between the entry of the decree and the institution of the present suit attacking its validity. The bill shows on its face that Nancy Rowe, W. L. Dennis, George Belcher, J. H.

Stinson, Green Charles, and others who would have known about the transactions both prior and subsequent to the institution of the 1919 suit, are dead. George W. McClanahan, who testified relative to the oral partition of the land of William McClanahan and as to other material facts in the case, stated that he was then fifty-nine years old. He is now presumably dead. Indeed, the brief of the appellees state that to be a fact and it is not challenged. Thus, much of the material evidence as to the surrounding facts and circumstances has been lost. In the meanwhile the record in the 1919 suit was on file in the clerk's office and open to inspection by appellants or their counsel. The bill in the present suit alleges no reason or excuse for the long delay of the appellants and those under whom they claim in asserting their rights.

It is elementary that unreasonable delay in the assertion of rights without excuse and coupled with the death of material witnesses and the loss of material evidence which works to the disadvantage of adverse parties will warrant the denial of equitable relief. 2 Pomeroy's Equity Jurisprudence, 5th Ed., § 419, etc., p. 171, etc; 7 Mich. Jur., Equity, § 26, etc., p. 47, etc; *O'Neill* v. *Cole, supra,* and authorities there collected.

That the bill must show on its face adequate excuse for such delay see, *Eubank* v. *Barnes,* 93 Va. 153, 156, 24 S. E. 908; *Hogg* v. *Shield,* 114 Va. 403, 409, 76 S. E. 934; *Camp Mfg. Co.* v. *Green,* 129 Va. 360, 374, 106 S. E. 394; *O'Neill* v. *Cole, supra* (194 Va., at pages 59, 60, 72 S. E. (2d) at pages 387, 388).

For these reasons we are of opinion that the trial court committed no error in sustaining the demurrers to the amended and supplemental bill. Accordingly, the decree is

*Affirmed.*