**In the Matter of the Determination of Heirship of Claude FRAY, a/k/a Claude J. Fray, a/k/a Claudie Fray, Deceased.**

**Myrtle FRAY, Appellant (Respondent),**

v.

**Richard L. FRAY, Trustee of the W.O. Fray Trust, Appellee (Petitioner),**

**O.P. Omley, et al., Appellees (Respondents).**

No. 86–33.

Supreme Court of Wyoming.

June 20, 1986.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Justice.

This action was commenced by appellee Richard L. Fray, as trustee of the W.O. Fray Trust, to determine the heirs of Claude Fray, deceased. Claude Fray and his heirs are beneficiaries under the W.O. Fray Trust. Both Myrtle Fray and Thelma Omley Fray claimed to be the legal wife of Claude Fray. The trial court upheld the

validity of Claude Fray's marriage to Thelma Omley Fray and held that her heirs (appellees O.P. Omley, George E. Omley, Elizabeth Crook and Sue Chappell) were the proper heirs of Claude Fray.

Appellant Myrtle Fray brings this appeal and raises a single issue:

"Did the probate court err in determining that Thelma O. Fray and not Myrtle M. Fray was the legal wife of the deceased, Claude J. Fray, and entitled to inherit one-half of his estate?"

We will affirm.

Claude Fray toiled all the days of his life, for heirs he knew not whom.

Claude and Myrtle Fray were married in Ellensburg, Washington, on June 23, 1923. On April 30, 1927, Cleo Jean Fray was born of the marriage. The marriage fell on bad times and Claude quit the marital bed, and strayed north of the border. While in Canada he knew one Florence Evelyn Brown, and the issue of this meretricious relationship was LeRoy Claude Fray, who was born February 1, 1928, in Edmonton, Alberta, Canada. Claude and Florence never married, but Claude later acknowledged his paternity of LeRoy. LeRoy was later adopted by his grandparents, Harry and Ethyl Decker.

Claude and Myrtle Fray separated sometime in 1934. On September 11, 1939, some five years later, Claude Fray filed for divorce in Washington against Myrtle. Myrtle filed an "Answer and Cross-Complaint," also seeking a divorce. Claude's petition was dismissed, but Myrtle was granted an interlocutory decree of divorce on June 24, 1940. No application was ever made by Myrtle to finalize the divorce decree. Therefore, on March 30, 1942, Claude Fray filed for a divorce from Myrtle in Nevada, and a final decree was entered on June 1, 1942.

Claude Fray married Thelma Omley Fray in Arizona in 1947. Claude and Thelma resided in California until Claude's death in 1965. Thelma died in 1973. Thelma's heirs seek inheritance from Claude Fray, who died intestate. The following chronology of significant dates is set forth in the record:

"6/23/23   Claude Fray and Myrtle Mildred Fray married in Ellensburg, Washington

"9/1/26   Claude Fray and Myrtle Mildred Fray separated

"4/30/27   Cleo Jean Fray (Ives) born to Claude Fray and Myrtle Mildred Fray at Ellensburg, Washington

"2/1/28   LeRoy Claude Fray (Decker) born to Claude Fray and Florence Evelyn Brown at Edmonton, Alberta, Canada

"12/17/37   LeRoy Claude Fray (Decker) adopted by Harry C. Decker and Ethyl Decker in Benton County, Washington

"6/24/40   Findings of Fact, Conclusion of Law and Interlocutory Order entered in *Claude J. Fray vs. Myrtle M. Fray,* Superior Court of Kittitas County, Washington

"6/1/42   Findings and Decree granting divorce entered in *Claude Fray vs. Myrtle Mildred Fray,* Second Judicial District court, Washoe County, Nevada

"9/8/47   Claude Fray and Thelma Omley Fray married in Yuma County, Arizona

"9/30/65   Claude Fray died in West Los Angeles, Los Angeles County, California"

At issue in this case is a property interest held by Claude Fray under the W.O. Fray Trust. The property is situate in Campbell County, Wyoming. The trial court found:

"NOW, THEREFORE, it is ORDERED, ADJUDGED AND DECREED that Claude Fray, * * * deceased, died more than two years prior to the institution of this proceeding, his date of death being September 30, 1965; that upon the date of death of Claude Fray, * * * deceased, his heirs at law, and the proportion of his estate to which each such heir is entitled, were and are as follows:

"One-Half (½) Thelma O. Fray, now deceased

"One-Fourth (¼) Cleo Jean Ives, 3525 Hartsock Lane, Colorado Springs, Colorado 80907

"One-Fourth (¼) LeRoy Decker, East 12 Salmon Street, Spokane, Washington 99218;

"and that the above-stated heirs of Claude Fray, * * * deceased, by descent, receive, in the proportions above-stated, all right, title and interest of Claude Fray, * * * in and to the mineral interest and estate in the real property described as follows:

"Campbell County, Wyoming
*Township 41 North, Range 73 West, 6th P.M.*

Section 7: SE¼

Section 8: NW¼SW¼S½SW¼

Section 17: NW¼NW¼

"and any and all revenues therefrom, and any and all real property interests of Claude Fray, * * * deceased, in the State of Wyoming discovered hereafter."

Appellant Myrtle Fray contends the trial court erred in determining that Thelma Omley Fray was the legal wife of Claude Fray for purposes of inheritance, and not Myrtle Fray.

We begin by stating our applicable standards of review. In *Pancratz Company, Inc. v. Kloefkorn-Ballard Construction/Development, Inc.,* 720 P.2d 906 (Wyo., 1986), we said:

"When reviewing cases on appeal we accept the evidence of the prevailing party as true, leaving out entirely the evidence presented in conflict therewith, giving every favorable inference which may fairly and reasonably be drawn from the prevailing party's evidence. *Shanor v. Engineering, Inc. of Wyoming,* Wyo., 705 P.2d 858 (1985). The trial court's findings are presumed correct, and such findings will not be disturbed on appeal unless inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence. *M & M Welding, Inc. v. Pavlicek,* Wyo., 713 P.2d 236 (1986)."

The rule in this state is that the law of the situs where land is situate determines its devolution upon the death of an owner. *In re Ray,* 74 Wyo. 389, 287 P.2d 629 (1955); and *In re Smith's Estate,* 55 Wyo. 181, 97 P.2d 677 (1940). Therefore, distribution was properly made under Wyoming law, specifically, § 2–4–101(a)(i), W.S.1977 (1985 Cum.Supp.), which reads in relevant part:

"If the intestate leaves husband or wife and children, or the descendents of any children surviving, one-half (½) of the estate shall descend to the surviving husband or wife, and the residue thereof to the surviving children and descendents of children, as hereinafter limited."

There is no dispute that the court correctly applied the law regarding Claude Fray's surviving children Cleo Jean Fray (Ives) and LeRoy Decker. The only dispute concerns whether the trial court correctly determined that Thelma Omley Fray was the legal wife of Claude Fray, therefore entitling her heirs to one-half interest in the property at issue.

Appellant Myrtle Fray contends that she should be deemed the lawful wife of Claude Fray since she contends the Washington interlocutory divorce decree was never finalized and the Nevada divorce decree was void for lack of personal service. In further support of her contentions she cites *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), for the proposition that the Nevada court lacked jurisdiction over her since she had no contacts in the state of Nevada. The contentions are wrong for several reasons.

First of all, the International Shoe case was decided in 1945, several years after the Nevada court entered its divorce decree in 1942. In *Pennoyer v. Neff,* 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565 (1877), the United States Supreme Court espoused the general rule that substituted service by publication only gives a court jurisdiction over property within its jurisdiction. However, the court made two important exceptions: 1) cases which affect the personal status of the plaintiff, and 2) cases where service of process is agreed to in advance. The court stated:

"To prevent any misapplication of the views expressed in this opinion, it is proper to observe that we do not mean to assert, by anything we have said, that a State may not authorize proceedings to determine the *status* of one of its citizens towards a non-resident, which would be binding within the State, though made without service of process or personal notice to the non-resident. The jurisdiction which every State possesses, to determine the civil *status* and capacities of all its inhabitants involves authority to prescribe the conditions on which proceedings affecting them may be commenced and carried on within its territory. The State, for example, has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved. * * *" 95 U.S. 735–736, 24 L.Ed. 573.

In *Williams v. State of North Carolina* (I), 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942), the court held that North Carolina was obligated to give full faith and credit to a Nevada divorce decree. This was so even though the cause of action could not be entertained in the state of the forum either because it was barred by local statute or contrary to local policy, and the judgment obtained in a sister state was entitled to full faith and credit. The court further stated:

"* * * Within the limits of her political power North Carolina may, of course, enforce her own policy regarding the marriage relation—an institution more basic in our civilization than any other. But society also has an interest in the avoidance of polygamous marriages (*Loughran v. Loughran*, 292 U.S. 216, 223, 54 S.Ct. 684, 686, 78 L.Ed. 1219) and in the protection of innocent offspring of marriages deemed legitimate in other jurisdictions. And other states have an equally legitimate concern in the status of persons domiciled there as respects the institution of marriage. So when a court of one state acting in accord with the requirements of procedural due process alters the marital status of one dom-

iciled in that state by granting him a divorce from his absent spouse, we cannot say its decree should be excepted from the full faith and credit clause merely because its enforcement or recognition in another state would conflict with the policy of the latter. * * *" 317 U.S. 303, 63 S.Ct. 215, 87 L.Ed. 288–289.

One contesting the validity of a divorce granted in another state may still question whether domicile was properly obtained in the foreign court. *Williams v. State of North Carolina* (II), 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). See also, *Sherrer v. Sherrer*, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429, 1 A.L.R.2d 1355 (1948).

Appellant has failed in her burden to affirmatively show that the Nevada proceedings were jurisdictionally defective. The record shows that Claude Fray, as a resident of the state of Nevada, filed for divorce on March 30, 1942. Concurrently with the filing, Claude Fray also filed an "Affidavit for Order for Publication of Summons" stating he did not know where Myrtle Fray was residing and that service should be accomplished through publication. The order was granted and service was made by publication as well as mailing service to Myrtle Fray's last known address. The divorce decree was then granted on June 1, 1942.

In the absence of a showing of a jurisdictional defect, we must give full faith and credit to judicial proceedings of another state:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Art. IV, § 1, U.S. Constitution.

A decree of divorce granted by another state having jurisdiction to do so is entitled to full faith and credit in every other state. *Johnson v. Muelberger*, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552 (1951). One authority has stated:

" * * * The Full Faith and Credit Clause of the Constitution as interpreted by the Supreme Court of the United States finally determines the conditions under which the decrees of courts in one state are to be recognized in other states. In these days of a mobile population it is highly desirable, if not essential, for a divorce decree to be unchallengable in all states. For this reason the limitation found in the Full Faith and Credit Clause, though it purports only to affect recognition in other states, is in practice nearly as effective in defining the boundaries of divorce court jurisdiction as the state statutes which actually set those boundaries." Clark, The Law of Domestic Relations in the United States, § 11.2, p. 287 (1968).

As early as 1934 in the case of *In re St. Clair's Estate*, 46 Wyo. 446, 28 P.2d 894 (1934), this court stated that second marriages are presumed to be valid, and such presumption can be overcome only by clear and convincing evidence. The court quoted with approval 18 R.C.L. 419, 420, §§ 43, 44, as follows:

" ' * * * The presumption, which increases in strength with the lapse of time, can only be overcome by clear and convincing evidence to the contrary, and the evidence to overcome it must be especially strong after the lapse of a great many years. To overcome the prima facie case established by the showing of a subsequent marriage, proof of a former marriage is required, and also evidence from which it may be concluded that it has not been dissolved by death or divorce. Mere proof of a prior marriage and that one party had not obtained a divorce is not sufficient, for the other might have obtained such divorce and left him or her free to contract the second marriage.' " Id., at 897.

In *Travis v. Travis Estate*, Wyo., 334 P.2d 508 (1959), we held that in the absence of a showing that a divorce decree entered in a district court was void on the face of the record, such decree was not subject to collateral attack in probate after the death of the divorced husband. In that case, the decedent was married three separate times and fathered a son each time. The decedent died intestate. After his death, his third wife attacked the validity of his last divorce. The probate court set aside the last divorce, thus adjudging decedent's third wife to be an heir. On appeal this court reversed, and stated the divorce was not subject to collateral attack since decedent's third wife had failed to show the divorce was void.

We think the same can be said here. Myrtle Fray has failed to show that the Nevada divorce decree is invalid and that the same should be voided. She claims she was never divorced from Claude Fray inasmuch as the interlocutory decree entered by the Washington court was never finalized. But that is because she never moved to have the order finalized. Be it remembered that after Claude Fray filed a petition seeking a divorce in Washington, Myrtle Fray filed an "Answer and Cross-Complaint" also seeking a divorce. In its interlocutory order the Washington court dismissed Claude Fray's complaint and granted Myrtle Fray's "cross-complaint," stating:

"The defendant upon her cross-complaint is entitled to a divorce from plaintiff, and that in due course defendant be awarded a divorce from plaintiff."

One year after the interlocutory order was entered, Myrtle Fray filed a "Petition to Modify Interlocutory Order" seeking: 1) an order to show cause why Claude Fray should not be held in contempt for failure to pay alimony and child support, and 2) a modification of the interlocutory order to have money held in a bank turned over to the clerk of court for security to pay child support. The order was granted. As noted earlier, Myrtle Fray never moved to finalize the divorce decree.

Now, some forty-five years after the interlocutory order was granted by the Washington court, some forty-three years after the divorce decree was entered in Nevada, and some twenty years after Claude Fray's death, Myrtle Fray claims

she should be adjudged the legal wife of Claude Fray for the purposes of inheritance.

" 'It is elementary that unreasonable delay in the assertion of rights without excuse and coupled with the death of material witnesses and the loss of material evidence which works to the disadvantage of adverse parties will warrant the denial of equitable relief. [Citations.] *Rowe v. Big Sandy Coal Corporation*, 197 Va. 136, 144, 87 S.E.2d 763, 768 (1955).'

\* \* \* \* \* \*

"It is plainly apparent that appellee had no interest in Bartsch or the decree he obtained in Nevada, except as to the alimony paid by him. Their marriage had been terminated by his death, and it is apparent that appellee asserted her relation as the widow of Bartsch, and the invalidity of his decree of divorce, solely for the purpose of obtaining a portion of his property.

\* \* \* \* \* \*

" \* \* \* Here, Signe Bartsch, appellee, did nothing to preserve her marriage. The marital relations between her and Bartsch had ceased thirty years before his death, and she had acquiesced in his remarriage for more than twenty years. Moreover, she presented no reasonable excuse or justification for her delay in seeking an annulment of the Nevada decree." *Bartsch v. Bartsch*, 204 Va. 462, 132 S.E.2d 416, 420–422 (1963).

One authority has stated:

"A party seeking to vacate or annul a divorce decree must be actuated by good motives and not by expectation of personal advantage, especially where a third party has, in good faith, married the divorced spouse; and a desire for personal advantage will be presumed from long acquiescence by a defendant in a fraudulent decree which he seeks to set aside. \* \* \* " 27A C.J.S. Divorce § 171, p. 688 (1959).

We think the trial court was correct in adjudging Thelma Omley Fray the legal wife of Claude Fray. Myrtle Fray has failed to meet her burden of showing that the Nevada decree was invalid. Furthermore, we think equity demands that the trial court's judgment be upheld. Having found no reversible error, the trial court's judgment is affirmed in all respects.

Affirmed.

URBIGKIT, Justice, concurring.

I concur.

However, by concurrence it is not intended to presume the validity of the Nevada divorce as the dispositive issue on appeal. Appellant had the burden of the attack on the validity of the Nevada judgment, which was not met by evidence or argument. The record affords, at most, modest conviction that with proper attack the divorce decree would have survived that jurisdictional attack based upon the affidavit upon which it was premised. Jurists' suspicions, however, are not a substitute for facts demonstrated by appellate record, including an adequate proof of the law of venue.