**Eugene L. LIVINGSTON, Appellant (Defendant–Obligor),**

v.

**Janet VANDERIET, Appellee (Plaintiff–Obligee).**

**No. 93–47.**

Supreme Court of Wyoming.

Oct. 11, 1993.

Donald L. Painter, Casper, for appellant.

Eric A. Easton, Natrona County Atty., Casper, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

The sole question in this case is whether a defendant in a proceeding to enforce payment of child support brought under the Revised Uniform Reciprocal Enforcement of Support Act (URESA) is entitled to have paternity established according to the procedures set forth in WYO.STAT. § 14-2-109(a) (1986).[1] The defendant was married to the mother of the child and, in a decree of divorce entered in a Utah court, he was ordered to pay the child support. The Utah decree encompassed a finding that the child was the minor child of the parties. In this case, the trial court denied the defendant's request to reopen the question of paternity. We hold the decision of the trial court is justified by the full faith and credit clause of the Constitution of the United States, the concept of res judicata, and precedent in the state of Wyoming. The trial court's order requiring the defendant to pay the child support is affirmed.

Eugene L. Livingston (Livingston), the ex-husband, in his Appellant's Brief, stated the issue in this way:

1. Whether Appellant is entitled to a paternity blood test to determine his pa-

ternity of the child which is the subject of this action.

Janet Vanderiet (Vanderiet), the mother and ex-wife, incorporated two issues in her Brief of Appellee:

1. Whether appellant is entitled to a paternity blood test to determine his paternity of the child.

2. Whether courts in the state of Wyoming have jurisdiction to determine paternity in this matter.

A child was born to Vanderiet on May 16, 1979, approximately six and one-half months prior to the marriage of Livingston and Vanderiet on November 3, 1979, in Elko, Nevada. They subsequently were divorced in the District Court of the Third Judicial District of the State of Utah in and for Salt Lake County, with the decree being entered on April 20, 1982. The Utah decree of divorce, in awarding custody of the child to Vanderiet, described the child as the "minor child of the parties" and ordered Livingston to pay child support in the amount of $150 per month commencing May 1, 1982.

An action was filed in Utah on February 13, 1987 pursuant to URESA. On October 19, 1988, a URESA petition was filed in Wyoming where Livingston apparently was residing. The Wyoming URESA action remained on the docket until September 9, 1992, when a summons and petition were served on Livingston. Livingston then answered the petition with a general denial of the allegations, and he specifically denied paternity. A hearing was held in that action on January 20, 1993, with both parties appearing with counsel. The court entered an order denying Livingston's request to reopen the issue of paternity and directing him to pay $150 per month in child support as originally decreed by the court in Utah. Livingston has taken his appeal from that order.

The URESA statute under which this case was instituted is found at WYO.STAT. §§ 20-4-101 to -138 (1987). WYO.STAT.

---

1. WYO.STAT. § 14-2-109(a) (1986) provides:

The court may, and upon request of a party shall, require the child, mother or alleged father to submit to blood tests. The tests shall be performed by an expert qualified as an examiner of blood types appointed by the court.

§ 20–4–101 articulates the purpose of this legislation:

> The purposes of this act [§§ 20–4–101 to 20–4–138] are to improve and extend by reciprocal legislation the enforcement of duties of support.

We have said in this regard:

> The mischief the Act was intended to cure was the nonpayment of child support. More specifically, the URESA was intended to provide an inexpensive, simplified and effective means of enforcing the duty of support owed by the obligor in one state to the obligee in another state. *Clarkston v. Bridge*, 273 Or. 68, 539 P.2d 1094, 81 A.L.R.3d 1166 (1975).

*Bjugan v. Bjugan*, 710 P.2d 213, 218 (Wyo. 1985).

With respect to paternity, the Wyoming URESA statutes says:

> If the obligor asserts as a defense that he is not the father of the child for whom support is sought and it appears to the court that the defense is not frivolous, and if both of the parties are present at the hearing or the proof required in the case indicates that the presence of either or both of the parties is not necessary, the court shall adjudicate the paternity issue pursuant to W.S. 14–2–101 through 14–2–120. Otherwise the court shall continue the hearing until the paternity issue has been adjudicated.

Wyo.Stat. § 20–4–127 (1987).

Livingston's claim is that he is entitled to have paternity established by the procedure set forth in Wyo.Stat. § 14–2–109(a). He argues that, under the plain and specific language of this statute, he is entitled to a blood test in order to establish his paternity.

We are satisfied that Livingston's contention is foreclosed by the full faith and credit clause of the Constitution of the United States of America.[2] Furthermore, the argument is foreclosed by the doctrine of *res judicata*. If those two legal hurdles were not adequate, the argument is foreclosed in any event by Wyoming precedent.

We have held that a decree of divorce granted by one state having the jurisdiction to do so is entitled to full faith and credit, under the constitutional provision, in every other state. *Matter of Fray*, 721 P.2d 1054 (Wyo.1986) (citing *Johnson v. Muelberger*, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552 (1951)). The public policy behind the recognition of judicial proceedings, in this case the Utah decree of divorce, by another state has been summarized in this way:

> The Full Faith and Credit Clause of the Constitution as interpreted by the Supreme Court of the United States finally determines the conditions under which the decrees of courts in one state are to be recognized in other states. In these days of a mobile population it is highly desirable, if not essential, for a divorce decree to be unchallengable in all states. For this reason the limitation found in the Full Faith and Credit Clause, though it purports only to affect recognition in other states, is in practice nearly as effective in defining the boundaries of divorce court jurisdiction as the state statutes which actually set those boundaries.

Clark, The Law of Domestic Relations in the United States, § 11.2, p. 287 (1968).

*Fray*, 721 P.2d at 1058.

█ In the court in Utah, Livingston and Vanderiet were granted a divorce pursuant to the decree entered on April 20, 1982. The decree found that the child for whom support is sought is the "minor child of the parties." Livingston has made no effort to demonstrate any invalidity in the Utah decree of divorce nor any showing that it could be voided. *Fray*. In the absence of such a showing, we hold that the determination of the Utah court must be afforded full faith and credit in the URESA proceeding in Wyoming.

█ Turning to the second justification for affirming the trial court, the four

---

2. U.S. CONST. art. IV § 1 provides, in pertinent part:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.

criteria used to determine the applicability of *res judicata* are:

> (1) the parties were identical; (2) the subject matter was identical; (3) the issues were the same and related to the subject matter; and (4) the capacities of the persons were identical in reference to both the subject matter and the issues between them.

*CSP v. DDC*, 842 P.2d 528, 532–33 (Wyo. 1992), and *Matter of Paternity of JRW*, 814 P.2d 1256, 1265 (Wyo.1991) (quoting *Matter of Estate of Newell*, 765 P.2d 1353, 1355 (Wyo.1988)). *See also Harshfield v. Harshfield*, 842 P.2d 535, 537 (Wyo.1992).

The criteria are satisfied in this case. First, Livingston and Vanderiet are the identical parties who were litigating the divorce proceeding. Second, the divorce proceeding ordered Livingston to pay child support after finding that the child for whom support is sought is the "minor child of the parties." Third, the question of paternity and child support were directly involved in the Utah divorce case. Fourth, both parties had the same fundamental interests in determination of paternity in the divorce proceeding. It follows, ineluctably, that Livingston's claim would be foreclosed under the doctrine of *res judicata*.

Finally, we turn to our Wyoming law in this area. In *JRW*, we interpreted the language of Wyo.Stat. § 14–2–109(a), in this way:

> While genetic testing, appointment of a guardian ad litem and an informal hearing are mandatory in the case of an initial, contested paternity determination, the Act does not mandate that the same procedures be used when paternity has already been established with the consent of the parties in a prior adjudication. We read nothing in the Parentage Act which requires full procedural compliance with the Act before the question of paternity is resolved.

*JRW*, 814 P.2d at 1261.

We cited *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91, *reh'g denied*, 492 U.S. 937, 110 S.Ct. 22, 106 L.Ed.2d 634 (1989), and we concluded that

the presumption of legitimacy is actually a substantive rule of law based on an overriding social policy derived from the relationship of a presumed father and the child at the time of birth. We said, categorically:

> Applying the reasoning in *Michael H.* to this case, if we grant the appellant the right to compel genetic testing, we effectively deny the children's protected interests in having their legitimacy presumed under the Act. The balance between the children's protected right not to be "bastardiz[ed]" outweighs the father's interest in ascertaining paternity more than two years after acknowledging the same.

*JRW*, 814 P.2d at 1262 (citations omitted).

In *JRW*, the issue was whether a presumed father could raise the question of paternity more than two years after his divorce from the child's natural mother. Invoking the doctrines of *res judicata*, collateral estoppel, and judicial estoppel, and because the father had failed to bring his paternity contest within a reasonable time, we held the father's claim that neither of the two minor children were his was barred. *JRW*. In that case, like this case, one of the children had been born prior to the marriage between the mother and the presumed father.

■ There are certain requirements for a presumption of paternity under the Uniform Parentage Act, and they include:

> (a) A man is presumed to be the natural father of a child if:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (iii) After the child's birth, he and the child's natural mother married \* \* \*; and:
>
>> (A) He has acknowledged his paternity of the child in writing filed with the state office of vital records services; or
>>
>> (B) With his consent, he is named as the child's father on the child's birth certificate; or

(C) He is obligated to support the child under a written voluntary promise or by court order * * *.

WYO.STAT. § 14–2–102 (1986).

This record demonstrates that Livingston is the presumed father of the child under this statute by virtue of the fact that he married Vanderiet and became obligated to pay child support in the Utah divorce decree.

Livingston's rights to contest paternity under the Uniform Parentage Act are found in WYO.STAT. § 14–2–104 (1986):

(a) A child, his natural mother or a man presumed to be his father under W.S. 14–2–102(a)(i), (ii) or (iii) may bring action:

*　　*　　*　　*　　*　　*

(ii) For the purpose of declaring the nonexistence of the father and child relationship presumed under W.S. 14–2–102(a)(i), (ii) or (iii) only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five (5) years after the child's birth.

It is clear that not only has Livingston satisfied the statutory requirements for a presumption of paternity, but he is barred from the paternity action due to the tolling of the statute of limitations.

In *JRW*, the presumed father brought the paternity action within five years of the birth of both children, but he waited more than two years after that fact before pursuing the action. We said waiting for two years was not a "reasonable time." In this case, Livingston denied he was a parent of the subject minor child in his answer dated September 30, 1992, more than ten years after the divorce decree, when the child was approximately thirteen years of age. If Wyoming law were to control the resolution of this case, Livingston has no recourse.

We hold that, under the full faith and credit clause of the Constitution of the United States, the decision of the trial court must be affirmed. For the edification of the bench and bar, we also conclude the case could have been resolved under the doctrine of *res judicata* or under appropriate Wyoming precedent. The trial court's order requiring Livingston to pay the child support is affirmed.